# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

RHODE-NYC, LLC,

Plaintiff,

v.

RHODEDEODATO CORP., HRBEAUTY, LLC
d/b/a RHODE, and HAILEY BIEBER,

Defendants.

Civil Action No. __12-cv-5185__

**VERIFIED COMPLAINT**

Plaintiff Rhode-NYC, LLC ("Plaintiff" or "Rhode"), with offices at 5225 Wilshire Blvd, Suite 218, Los Angeles, California 90036, by and through its undersigned attorneys, hereby alleges by way of this Verified Complaint against Rhodedeodato Corp., with offices at 244 W. 54 St., 9th Fl., New York, New York 10019, HRBeauty LLC d/b/a Rhode, with offices at 9800 Wilshire Blvd, Suite 111, Beverly Hills, California 90212, and Hailey Bieber ("Ms. Bieber") (collectively referred to as "Defendants"), the following:

## NATURE AND BASIS OF THE ACTION

1.       This is an action by Rhode, a clothing and lifestyle brand in operation since 2014, to prevent and restrain Defendants' unauthorized and infringing misappropriation of Rhode's distinctive RHODE trademark (the "RHODE Mark" or the "Mark").

2.       Rhode is a quintessential modern success story.  Its founders, former college roommates Purna Khatau and Phoebe Vickers, quit their day jobs to fill what they saw as a gap in the high-end clothing market.  Armed with little more than vision, grit, and business-savvy, they built a vibrant and unique clothing brand from scratch.  They devoted themselves to building and promoting the RHODE brand, honing their aesthetic and expanding their product lines, and

doggedly working to get the brand featured on fashion blogs and offered in stores.  Eight years later, their RHODE-branded products have been featured in magazines like *Vogue*, and carried in stores like Saks Fifth Avenue, and worn by the likes of Beyoncé, Tracee Ellis Ross, Lupita Nyong'o, and more.  And sales success has followed.  The company's female founders have entrenched RHODE as a distinct and recognizable brand with an intuitive take on dressing that provides Rhode's customers with vibrant clothing and accessories to punctuate their lives.

3.      Defendants—the global celebrity Hailey Bieber and her corporations—threaten to wash away what Khatau and Vickers have built in an instant.  Last week they launched a beauty brand with the identical name "rhode."

4.      Built upon Ms. Bieber's already immense celebrity status and massive fan following, and blared out incessantly to her 45 million Instagram plus followers, 9.2 million followers on TikTok, and 1.7 million followers on YouTube, Bieber's new, trademark-infringing brand will quickly swamp Rhode's market presence, confuse the marketplace, and ultimately destroy the goodwill and reputation of the RHODE brand.

5.      There is no doubt that Ms. Bieber and her companies know of Rhode's superior rights.  Indeed, Defendants previously sought to *acquire* the RHODE mark, appreciating that the brands could not coexist without confusion.  Given the sacrifices they had made to build the brand, Khatau and Vickers refused.  The RHODE brand is their most important asset.  But Ms. Bieber, who surely could leverage her fame into success with a differently-branded beauty line, apparently does not care that two other women entrepreneurs have been using the RHODE brand name for years.

6.      Ms. Bieber's actions stand in stark contrast to her words.  In a feature released in *Forbes* on the day of her product launch, Ms. Bieber laments, "I exist in a world of media that

likes to perpetuate women against women... Instead of building each other up, it's about tearing each other down and having trauma and not being able to support each other. I've had a really hard time with that. We're stronger in numbers and supporting each other. There's room for everyone to thrive; there's space for everybody to succeed. I want to do my best to perpetuate that and not be part of the pettiness and drama. I would love to share it with the world and lift each other up. If I can be a teeny bit of that it would make me happy." But the reality is that the "world of media" Ms. Bieber describes is at her disposal. And she has chosen to use it to squash a woman- and minority co-founded brand that simply cannot compete with her immense fame and following.

7.  Defendants' conduct is as plainly unlawful as it is unprincipled. By appropriating another's mark in an overlapping product market, Defendants violate both the Lanham Act and New York state law, threatening mass confusion of the sort the trademark law exists to prevent. Rhode has no choice but to avail itself of all possible relief under the law in order to avoid being squashed under the immense weight of the latest venture of an internet celebrity.

## THE PARTIES

### Plaintiff Rhode

8.  Plaintiff Rhode-NYC, LLC is a limited liability company organized and existing under the laws of Delaware, formed on May 16, 2013, with its principal place of business at 5225 Wilshire Blvd, Suite 218, Los Angeles, California 90036. About half of Rhode's full-time employees live and work in New York City, including the company's COO.

9.  Rhode is a fashion brand providing clothing and other goods bearing the RHODE Mark, including but not limited to women's and children's clothing, handbags, hair accessories, and a variety of housewares, games, and toys ("Rhode's Goods").

**Defendants Rhodedeodato,  HRBeauty, and Hailey Bieber**

10.     Upon information and belief, Rhodedeodato Corp. ("Rhodedeodato") is a corporation organized and existing under the laws of Delaware, incorporated on February 18, 2015, with its principal place of business at 244 W. 54 St., 9th Fl., New York, New York 10019.

11.     Upon information and belief, Rhodedeodato's address is the same as the address of Ms. Bieber's business manager, Mr. David Levin, a Partner of Adeptus Partners, LLC, who, upon information and belief, lives and works in New York City.

12.     Upon information and belief, Hailey Bieber is the Chief Executive Officer of Rhodedeodato.

13.     Upon information and belief, HRBeauty LLC d/b/a Rhode ("HRBeauty") is a limited liability company organized and existing under the laws of Delaware, formed on March 31, 2021, with its principal place of business at 9800 Wilshire Blvd, Suite 111, Beverly Hills, California 90212.

14.     Upon information and belief, HRBeauty has an advisory board consisting of two members, Dr. Ron Robinson and Dr. Dhaval Bhanusali, both of whom work in the state of New York.

15.     Upon information and belief, Hailey Bieber is an individual residing in California and New York.

16.     Upon information and belief, Defendants are marketing and selling goods bearing the "rhode" mark, including, but not limited to, skin care products ("Defendants' Goods") in New York.

17.     Upon information and belief, Defendants planned to and did in fact launch their infringing "rhode" skin care line in New York City on June 15, 2022.

18.     In addition to planning and advertising the brand launch for 8 a.m. EST in New York City, upon information and belief, Ms. Bieber appeared on "Good Morning America," a live television show filmed in New York City with around 815,000 viewers each day, on June 15, 2022, to promote the launch of Defendants' "rhode" skin care line.  Also upon information and belief, Ms. Bieber conducted press for the launch—including a livestream on Instagram beginning around 2:30 p.m. on June 15, 2022—from her home in New York City; Ms. Bieber hosted and attended a New York City launch party; and Ms. Bieber appeared on The Tonight Show with Jimmy Fallon, filmed in New York City, to promote "rhode".

19.     Upon information and belief, in doing the acts and engaging in the conduct alleged throughout this Verified Complaint, each of the Defendants was the agent, principal, employee, servant, employer, successor, alter ego, joint venturer, partner and/or co-conspirator of each other Defendant in this action, with the exception of wherever reference is made herein to acts occurring before March 31, 2021, in which case each of Rhodedeodato and Ms. Bieber were each the agent, principal, employee, servant, employer, successor, alter ego, joint venturer, partner and/or co-conspirator of the other.

20.     Upon information and belief, each of the Defendants were, at all relevant times mentioned herein, acting within the course and scope of such capacities and with the consent of the remaining Defendants, with the exception of wherever reference is made herein to acts occurring before March 31, 2021, in which case each of Rhodedeodato and Ms. Bieber were each acting within the course and scope of such capacities and with the consent of the other.

21.     Wherever reference is made herein to an act of one of the Defendants, such allegation shall be deemed to mean the acts of such Defendant and each of the other Defendants, acting individually, jointly and severally, with the exception of wherever reference is made herein

to an act occurring before March 31, 2021, in which case such allegation shall be deemed to mean the acts of each of Rhodedeodato and Ms. Bieber, acting individually, jointly, and severally.

## JURISDICTION AND VENUE

22.     This action arises out of violations of the United States Trademark Act (the "Lanham Act") 15 U.S.C. § 1051, *et. seq*., and subject matter jurisdiction is therefore conferred upon this Court by 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (action arising under an Act of Congress relating to trademarks or copyrights).

23.     Supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b).

24.     This Court has personal jurisdiction over Defendants because, upon information and belief, (a) Rhodedeodato has a principal place of business in this District; (b) Defendants each have continuous, systematic and substantial business contacts with residents of this District; and (c) the trademark-infringing goods were launched and are being sold in this State and Defendants have deliberately created confusion among Rhode's existing and potential customers, many of whom reside in New York, and caused significant harm to Rhode's reputation, goodwill and trademarks in New York.

25.     A substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

### Rhode, Its Products, and the RHODE Mark

26.     Plaintiff Rhode, founded by former college roommates Purna Khatau and Phoebe Vickers, was formed in 2013.  Under the brand and trademark RHODE, the company sells luxury

clothing and accessories that are crafted with intent and infused with joy, providing the women who wear RHODE a sense of ease and carefree confidence.

27.     Ms. Khatau and Ms. Vickers came up with the idea for Rhode while traveling together in Goa, India.  Over sunset cocktails, the friends decided to combine their years of fashion and advertising experience to start a brand inspired by vintage textiles and global influences, targeted at women like themselves: feminine, confident, and well-traveled women.  In that spirit, they chose to name their brand RHODE, evoking the grace and power of the sea nymph and protective goddess from Greek mythology with the same moniker.  The brand is particularly well known for vividly colored and boldly printed dresses in timeless silhouettes that have now become iconic, like the Ella and Pia dresses.  Some examples of Rhode clothing items include the following:



28.     Today, Rhode has significant brand recognition.  Not only is Rhode carried by 231 unique stockists globally, but further, its luxury fashion and lifestyle products are sold at high-end stores around the world.  In the United States, Bergdorf Goodman, Neiman Marcus and Saks Fifth Avenue all carry Rhode's high-end products, and Bloomingdales has devoted a section of its New York City Flagship to the brand.  In the United Kingdom, Harrods and Brown Thomas, two of the most exclusive brick-and-mortar shops in London and Dublin, are scheduled to host pop ups for

the brand in coming weeks.  Several top online retailers of luxury brands—including Matches Fashion, Net A Porter, and Revolve—sell Rhode products to consumers around the world.  Rhode has also collaborated with other well-known brands, including Shopbop, and has in development several other collaborations with large retailers that are set to launch in early 2023 bringing Rhode's fashion and home products to a much wider audience at an accessible price point.

29.    Rhode has also been featured in dozens of fashion and lifestyle magazines, including *Vogue*, *Vogue UK*, *Vogue India*, *Harper's Bazaar*, *Harper's Bazaar Singapore*, *Women's Wear Daily*, *Oprah Magazine*, *InStyle*, *Elle*, *Marie Claire*, and *Travel + Leisure*.  They have also been featured on numerous fashion blogs, including WhoWhatWear, The Zoe Report, Fashionista, The Daily Front Row, and Coveteur.

30.    Rhode has also been worn by celebrities and fashion influencers alike, including Beyoncé, Rihanna, Mindy Kaling, Debra Messing, Sophia Bush, Tracee Ellis-Ross, Lupita N'yongo, Busy Phillips, Maya Rudolph, Arielle Charnas, Julie Berolzheimer, Julie Sariñana, and Eva Chen:



BEYONCÉ



MINDY KALING



TRACEE ELLIS-ROSS



LUPITA NYONG'O



BUSY PHILLIPS



MAYA RUDOLPH



ARIELLE CHARNAS, SOMETHING NAVY



JULIE SARINARA, SINCERELY JULES



EVA CHEN

31.     Rhode's growth since the company's founding only further highlights the success of the brand.  Not only did the brand survive the COVID-induced economic downturn, but in the last twelve months, the company has thrived.  Last year, in 2021, sales were over $9 million and this year worldwide sales are on track for $14.5 million.

32.     Rhode's website, www.shoprhode.com—which is the basis for a relatively small subset of Rhode's total revenue—had 2.7 million page visits in 2021 and is on track for 3.6 million page visits in 2022.

33.     In June 2013, Rhode applied for a U.S. trademark registration for the mark "RHODE RESORT."  The mark, which disclaimed "resort" as descriptive, was registered in May 2014, covered dresses, tops, pants, shorts, skirts, tunics, caftans, jumpsuits, cardigans, rompers, and scarves (Reg. No. 4540333).

34.     On March 3, 2017, Rhode applied for the mark, "RHODE," covering caftans, cardigans, dresses, jumpsuits, pants, rompers, scarves, shorts, skirts, tops, and tunics, and the mark was registered on September 12, 2017 (Reg. No. 5286239).

35.     Given Rhode's success in selling luxury garments, in early 2018, Rhode began plans to expand into other markets and execute on its plan become a luxury lifestyle brand.  On June 11, 2019, Rhode filed two U.S. trademark applications for the RHODE Mark, one for handbags (Serial No. 88468794) and one for footwear (Serial No. 88468798), the former of which matured into a registered trademark on February 9, 2021.

36.     Today, Rhode owns three U.S. trademark registrations for the RHODE Mark, including for clothing (Reg. No. 5286239), handbags (Reg. No. 6267443), and textiles, children's and women's clothing, hair accessories, dolls, puzzles, and holiday ornaments (Reg. No. 6539188).  Rhode also has pending a variety of other trademark applications with the U.S. Patent and

Trademark Office, representing a host of products in development, many expected to launch shortly (Serial Nos. 88468798 [footwear], 90441975 [men's clothing, sunglasses, jewelry, and housewares], 90674141 [retail store services in the field of clothing and other products]).

37.     A true and correct copy of the registration certificate from the U.S. Patent and Trademark Office for each of the aforementioned trademark registrations is attached hereto as **Exhibit A**, as are Rhode's pending trademark applications.

38.     Rhode's applications and registrations for the "RHODE" Mark are summarized in the following chart:

**Rhode's Applications and Registrations for the RHODE Mark**

| Application No. (Date) | Int'l Class | Goods and/or Services | First Use Date; First Use in Commerce Date | Registration No. (Date) |
|---|---|---|---|---|
| 87356751 (2017/03/02) | 25 | Caftans; Cardigans; Dresses; Jumpsuits; Pants; Rompers; Scarves; Shorts; Skirts; Tops; Tunics | 2014/02/13 (first use and first use in commerce) | 5286239 (2017/09/12) |
| 88468794 (2019/06/11) | 18 | Handbags; Fashion handbags | 2019/12/10 (first use) 2020/12/09 (first use in commerce) | 6267443 (2021/02/09) |
| 88468798 (2019/06/11) | 25 | Espadrilles; Footwear; Footwear for women; Footwear, namely, pumps; Shoes; Slippers; Women's shoes; Beach shoes; Dress shoes; Leather shoes; Platform shoes | N/A | N/A |

| 90441956 (2020/12/31) | 24 | Blanket throws; towels of textile; tablemats of textile; table napkins of textile; coasters of textile; table cloth of textile; covers for cushions; quilt covers | 2020/12/16 (first use and first use in commerce) | 6539188 (2021/10/26) |
|---|---|---|---|---|
| | 25 | Children's clothing, namely, dresses, shirts, pants, t-shirts, sweatshirts, pajamas; women's clothing, namely, dresses, pajamas, pants, tops as clothing, shorts, track pants, sweatshirts, t-shirts, shorts, sweaters, jackets; sleep masks | 2020/10/08 (first use and first use in commerce) | |
| | 26 | Hair accessories, namely, hair scrunchies | 2020/07/25 (first use and first use in commerce) | |
| | 28 | Plush dolls; puzzles; ornaments for Christmas trees, except lights, candles and confectionery | 2020/12/09 (first use and first use in commerce) | |
| 90441975 (2020/12/31) | 4 | Candles | N/A | N/A |
| | 9 | Sunglasses | | |
| | 14 | Women's jewelry; rings; bracelets; necklaces; jewelry, including imitation jewelry and plastic jewelry; costume jewelry; jewelry boxes | | |
| | 20 | Pillows; cushions; Dog beds | | |
| | 21 | Coasters, not of paper or textile; ornaments of china, crystal, glasses, porcelain, terra cotta; enamelware plates, bowls; mugs | | |

| | 25 | Men's clothing, namely, shirts, pants, t-shirts, sweatshirts, pajamas; Swimwear | | |
|---|---|---|---|---|
| 90674141 (2021/04/27) | 35 | Retail store services and online retail store services in the field of clothing, accessories, shoes, jewelry, bags, candles, sunglasses, home decor, bath products, flatware, blankets, towels, toys, sanitary masks, and holiday ornaments | N/A | N/A |

39.     In addition to Rhode's registered marks and applications, Rhode has established common law rights to the RHODE mark.  All of the products underlying Rhode's millions of dollars in sales bear the distinctive RHODE mark, which has been in continuous, uninterrupted use in interstate commerce since the company's launch in 2014 on a variety of fashion products, including clothing like dresses, jumpsuits, caftans, sweaters, and pants, and used more recently on bags, housewares like pillows and coaster sets, accessories like hair scrunchies, and other lifestyle items, like cooking aprons, oven mitts, and puzzles.  Rhode's trademark registrations and common law rights are together referred to herein as the "RHODE Marks."

40.     Rhode also has trademark rights in its hashtag "ontherhode" which it has been using in interstate commerce since 2014.

41.     At all times relevant hereto, Rhode has been the owner of all right, title, and interest in and to the RHODE Marks. The trademark registrations for the RHODE Marks are valid and subsisting and in full force and effect.

**Defendants' Wrongful Acts**

42.     Defendants launched their infringing "rhode" skin care products on June 15, 2022.

43.     "rhode," as used on Defendants' goods is identical to the RHODE Marks owned by Plaintiff.

44.     Upon information and belief, Defendants intend to market and sell not just beauty and cosmetic products but a variety of lifestyle goods, including clothing and housewares, using the "rhode" name.  *See* **Exhibit B** (collecting Defendants' applications for the "rhode" mark).

45.     Defendants good are directly adjacent to the products sold by Rhode (in the case of skin care) and identical to products sold Rhode (in the case of clothing) and are likely to cause confusion between the sources of the goods and as to the parties' affiliations.

46.     Defendants were fully aware of Rhode's trademark registrations and that Defendants' use of "rhode" for skin care would cause confusion.

47.     On November 16, 2018, Rhodedeodato, acting for Ms. Bieber, filed a U.S. trademark application to register a mark in stylized form as follows:

# rhode

The application further specified that the intended use of the mark would be for class 25 goods, specifically "clothing" (Serial. No. 88197057).

48.     Also on November 16, 2018, counsel for Ms. Bieber contacted counsel for Rhode. Clearly recognizing Rhode's prior rights to the use of RHODE, Ms. Bieber offered to buy Rhode's trademark registration.

49.     Given the years of hard work and sacrifice it had already poured into the brand, Rhode declined to sell the RHODE Mark.

50.     In April 2019, Rhode's RHODE trademark registration was cited against Rhodedeodato's application to use the mark on clothing.  Rhodedeodato subsequently abandoned that application.

51.     Rhodedeodato filed an application for "HAILEY RHODE", for clothing, on August 20, 2019 (Serial No. 88585955).

52.     In 2020, Rhodedeodato filed three U.S. trademark applications, all in International Class 3 for beauty and cosmetic products: one for a standard "RHODE" mark (Serial No. 88788199), one for a "HAILEY RHODE BEAUTY" mark (Serial No. 88856361), and one for a stylized mark as follows:

# rhode

(Serial No. 90432582).

53.     Soon after, Rhode contacted Rhodedeodato and Ms. Bieber to express concerns about Rhodedeodato's plans to use "HAILEY RHODE" as a mark for clothing and "RHODE" and "HAILEY RHODE BEAUTY" as marks for skin care products and cosmetics.  In a letter to counsel for Rhodedeodato and Ms. Bieber, dated April 15, 2021, counsel for Rhode wrote, "Rhode is concerned that Rhodedeodato's use of ["RHODE," "HAILEY RHODE," and "HAILEY RHODE BEAUTY" as marks] will be confusingly similar to Rhode and the RHODE Marks if and once Rhodedeodato starts using the marks."  The letter explained that a mark used by a clothing brand and a near-identical mark used by a cosmetics brand would be confusingly similar because many clothing brands sell cosmetics and the product categories often overlap.

54.     Counsel for Ms. Bieber and Rhodedeodato responded on April 16, 2021, explaining that Rhodedeodato had abandoned its application for "RHODE" on clothing upon "ma[king] the

decision . . . to drop plans to proceed with a line of clothing under the 'RHODE' brand."  Counsel for Ms. Bieber and Rhodedeodato otherwise denied the possibility of confusion.

55.      In May 2022, however, Defendants again filed an application for RHODE on clothing.  HRBeauty, acting on behalf of Ms. Bieber, filed a U.S. intent-to-use trademark application to register the mark "RHODE" in International Classes 9, 18, 25 and 35 (Serial No. 97413184), and identified planned uses on clothing and bags and a variety of other goods. These applications were filed based on an intent-to-use, meaning Defendants were not yet using "rhode" on any products.

56.       These applications were filed by Defendants despite the fact that Rhode already had trademark registrations for the RHODE Mark for class 18 (bags) (Reg. No. 6267443) and class 25 (clothing) (Reg. Nos. 5286239 and 6539188), and had pending applications to register the RHODE Mark for classes 9 and 25 for additional categories of goods (Serial No. 90441975) and class 35 (Serial No. 90674141).

57.      Defendants' actions in launching "rhode" for skin care and seeking registration in clothing and bags with knowledge of Rhode's prior rights was intentional and constitutes bad faith.

**Ms. Bieber's Fame and Fan Following**

58.      Ms. Bieber is a celebrity with an extremely large social media following, including on Instagram, where she has 45 million plus followers and a verified account.

59.      Upon information and belief, Ms. Bieber also controls the @rhode verified Instagram account, which had no posts until June 8, 2022, but had nonetheless amassed 247,000 followers as of June 14, 2022, before any "rhode" products had even launched.  As of June 20, 2022, the @rhode account had more than 413,000 followers.

60.    Defendants have promoted the "rhode" skin care line on Ms. Bieber's Instagram account.  For example, on May 17, 2022, a post on Ms. Bieber's Instagram account of Ms. Bieber's image overlayed with the text "rhode" received more than 1.1 million "likes."  The caption read, "@rhode is getting closer by the day… see you next month on rhodeskin.com…"



61.    Defendants have also promoted the "rhode" skin care line on the @rhode Instagram account.  For example, on June 9, 2022, a collaboration post on Ms. Bieber's Instagram account and the @rhode Instagram account received more than 600,000 likes.



62.     Defendants have further promoted the "rhode" skin care launch through the website

associated with the domain <rhodeskin.com> (see below) and continue to promote it now that it

has launched.



63.     Additionally, Ms. Bieber's husband, Justin Bieber, has promoted "rhode" to his 243 million Instagram followers.  One post about "rhode" by Mr. Bieber garnered more than 1.5 million likes.

64.     By contrast, Rhode's Instagram account, @shoprhode, which is not verified, has a still impressive, but much smaller following, of around 190,000 users.

65.     Upon information and belief, Instagram has been unwilling to verify the @shoprhode account because of competition with Ms. Bieber.  Further, Rhode repeatedly applied for and was eventually given the @rhode Instagram handle for a few days before, upon information and belief, the company took the handle back to give it to Ms. Bieber for her skincare brand.

66.     Thus, while Rhode has achieved great success in the competitive and challenging fashion industry and has established a strong brand identity, there is no question that Ms. Bieber's worldwide fame affords her a more substantial platform from which to sell products.

67.     Indeed, Rhode could never afford to spend the advertising dollars it would take to match the scope of Ms. Bieber's reach through Instagram, other social media platforms, and celebrity and fashion media outlets.  In 2021, Rhode spent more than $1 million on brand advertisement, and the company is on track to spend around 30% more in 2022.  But with Ms. Bieber's new brand overshadowing the company's trademark recognition, Rhode would need to spend exponentially more to even begin to counter the damage.

68.     Rhode has no relationship or affiliation with Defendants and did not consent to Defendants' use of the RHODE Marks, including on Defendants' goods, their social media, or their website.

69.     Upon information and belief, the target audience for Ms. Bieber's products are her primarily young and primarily female Instagram followers.  Rhode markets to the same group of consumers.

**Confusion and Harm to the RHODE Brand Is Already Widespread**

70.     Defendants' use of "rhode" creates significant confusion.  The name is identical to the RHODE Marks and, as a result, it is very likely that consumers will be confused and believe that Rhode and Ms. Bieber are affiliated, sponsoring one another or collaborating.

71.     Here, given Ms. Bieber's massive media presence, it is also likely that Defendants' use of "rhode" will cause reverse confusion where consumers believe that Plaintiff is the junior user and is trading off of Defendants' good will and/or that Ms. Bieber is the source behind Rhode's clothing.

72.     It has only been a few days post launch but harm to the RHODE brand and consumer confusion is already apparent.

73.     Following the launch, Rhode took an immediate hit.  Comparing the results to a search engine query for the word "rhode," performed on June 14, 2022, the day before Defendants' launched their company, and the same search, performed two days later on June 16, 2022, is illustrative.  The below results show that Rhode was the first result the day before the launch but demoted significantly in the results two days after the launch:

## June 14, 2022 Google Search



## June 16, 2022 Google Search



74.     Likelihood of confusion is also apparent from the parties' email promotions.  For instance, on June 14, 2022, both brands emailed promotional materials to their respective mailing lists within the same 30 minutes:



75.     There is no way to determine which brand is which from this email traffic. Consumers may mistakenly believe that Rhode's products are actually Defendants' products, that Rhode is authorized by Defendants to sell goods for Defendants, or that Defendants' products are in fact made or sold by Rhode.

76.     In addition, consumers have incorrectly used Defendants' Instagram handle, @rhode, to tag photographs featuring clothing articles sold by Rhode.

77.     One Instagram user asked Instagram account @fashionbombdaily (an account with 2 million followers) to "find this dress"—a Rhode dress—as worn by the celebrity Hilary Duff. Obviously confused by Defendants' use of "rhode," the @fashionbombdaily account mistakenly tagged the dress with Defendants' @rhode handle, *not* Plaintiff's @shoprhode handle.



78.     The dress was then re-posted and re-tagged by other accounts, again with the wrong account linked.   For instance, the account @checkthetag, which has 119,000 followers on Instagram, tagged @rhode instead of @shoprhode.



79. This mis-tagging is a common occurrence on Instagram, as evidenced by the below screenshots from the App, which each show Rhode's clothing tagged with Ms. Bieber's handle and not its own:



80.     Interested consumers will likely click on the @rhode tag in these social media posts and be steered to Defendants' Instagram page, instead of being steered to Rhode's @shoprhode page.   Once redirected to Defendants' page, Rhode will lose the opportunity to convert a consumer's interest in its Rhode-branded products into sale of that or another Rhode product, thus causing Rhode financial and irreparable harm to its brand and associated goodwill and reputation.

81.     Defendants have only exacerbated the confusion.  For example, on June 15, 2022, Defendants promoted the "rhode" brand during an Instagram Live event titled, "shop rhode with hailey."  The name of this event is in fact **Rhode's** Instagram handle, @shoprhode.  Consumers use this handle to identify, find and interact with Rhode.  This creates significant potential for confusion:





82.     Defendants are also exacerbating confusion and infringing Rhode's rights by using

Rhode's hashtag #OnTheRHODE.  Rhode has been using the hashtag since its inception in 2014

as means to connect with its followers and fan base.  As Ms. Vickers told a reporter at The Daily

Front Row in May 2019, the brand's biggest supports have been its "loyal customers who continue

to shop with [the brand] and are always sharing their moments on social media, whether by tagging

the brand or using [its] hashtag, #OnTheRHODE."

83.     A sampling of images over the course of years demonstrates how #OnTheRHODE

is associated with Rhode's brand is below:



84.    Despite Rhode's eight-year use of this identifying hashtag, Defendants are using "on the rhode" on their website for their promotional materials:



85.    Further, in the image below, from Instagram, one user tags Rhode, @shoprhode, to ask whether a dress worn by Hailey Bieber is available for purchase. This is not Rhode's dress but the user is obviously confused thinking they could get Ms. Bieber's dress from Rhode (or perhaps thinking that "shoprhode" is Ms. Bieber's handle):



86.     Shortly after the launch, a Rhode sales agent received a text from a specialty store that carries Rhode's products.  The confused store owner believes that the skin care line is being offered by Rhode with Ms. Bieber as a spokesperson.  She writes:  "I saw that Rhode is coming out with a skincare line and hailey Bieber is the spokesperson…?  Is it going to be DTC or are we going to be able to buy it and sell it as well?  Nobody mentioned it to me in the showroom and it's all over social media, I wish someone would've let me know."

87.     On Saturday, June 18, an individual commented on Rhode's Instagram post asking, "Where do i find your new skincareline?" (see below).  And at 9:21 a.m. on June 20, 2022, a woman—who had never been a customer of Rhode—forwarded an email confirmation of her $74 purchase of "rhode" skin care products to the Rhode customer service email account, care@shoprhode.com.  In her message, she wrote, "Hi there, I'm just following up to see when my order will ship?"  Obviously, she was confused, seeking help from Rhode to find her missing "rhode" skin care products.



88.     One supporter messaged a member of co-founder Ms. Khatau's family to congratulate them on the collaboration with Ms. Bieber, indicating clear confusion and assuming that Rhode and Ms. Bieber were collaborating:



89.     In April 2022, Ms. Vickers received a text from a prominent fashion journalist at WWD who wrote, "I read about Hailey Bieber's Rhode beauty. Wtf?! That's your name!!!"

**Ms. Bieber Confirms Plans For Clothing**

90.      The risk of confusion has been exacerbated by recent social media posts showing Ms. Bieber wearing clothing embossed with the word "rhode."   For instance, the @rhode Instagram account featured a photograph of Ms. Bieber wearing a shirt with the word "rhode." This photograph has been re-posted on numerous occasions.  Other posts have shown "rhode"-stamped garments like sweatshirts and robes.

- 31 -







91.     Defendants' launch also focused on clothing and Ms. Bieber's curation of that perfect pair of jeans or t-shirt, as stated by Ms. Bieber during both her "Good Morning America" and Instagram Live launch events.

92.     Rhode also discovered that Ms. Bieber has expressly confirmed her plan to use "rhode" in connection with clothing.  On a TikTok post discovered by Rhode on June 17, the TikToker, who has 144,000 followers, was reviewing "rhode" skin care and talked about Ms. Bieber's connection to certain styles and suggested support for a "rhode" clothing line.  Ms. Bieber responded to that post with "Clothes will come :)"  This post has been reposted numerous times and liked by thousands of Instagram and TikTok users:



93.     Confusion is certainly likely with Defendants showing images of clothing and confirming that "clothes will come."

94.     Defendants have confirmed their plans for clothing by filing in May 2022 (No. 97413184), an intent-to-use trademark application which expressly includes clothing.  There is no question here that Defendants are likely to "bridge the gap" between the products they currently sell (namely, beauty products) and Rhode's core product (clothing).

**Rhode Is Suffering Ongoing Irreparable Harm**

95.     Should Defendants continue using a mark identical to the RHODE Marks the risks and harms to Rhode are numerous and irreparable.

96.     Defendants' use of a mark identical to the RHODE Marks will cause Rhode to lose control of its identity.  Consumers will be confused by Defendants' use of "rhode" such that that they may believe that Rhode, a long-established clothing brand, is merely an offshoot of Ms. Bieber's intended celebrity-product empire.

97.    Other consumers may incorrectly assume that the RHODE brand is now affiliated with Ms. Bieber or mistakenly believe that Ms. Bieber's products are Rhode's, diminishing Rhode's ability to use its registered RHODE mark as a designation of source.

98.    Given that Ms. Bieber has stated her intent to sell "affordable" products that cost no more than $30, confused Rhode customers who mis-associate Rhode with Ms. Bieber may believe that the quality of future Rhode products will be less than the standard they have come to expect from the brand, and therefore purchase items from Rhode's competitors rather than from Rhode.

99.    Likewise, confusion is likely to cause Rhode to lose control over its goodwill and reputation, which it has spent nearly a decade building.  Specifically, if consumers are unhappy with Defendants' products, platform, customer service, or any other component of the brand, and they are confused about connections between the two brands, they may wrongly attribute bad actions or poor quality to Rhode.  Thus, should Defendants be permitted to use the "rhode" mark, Rhode will effectively be left at the mercy of a junior user.

100.    Moreover, Defendants' use of "rhode" harms Rhode by foreclosing the brand's ability to enter the skincare and beauty market, which would be a natural expansion for a luxury lifestyle brand like Rhode.  Indeed, one collaborator has already approached Rhode about adding beauty products to a joint project.  However, unlike other luxury brands that have successfully expanded across clothing, footwear, beauty, fragrance, and skincare—brands like Chanel, Dior, and Tom Ford—if Defendants are permitted to use "rhode", Rhode will be unable to enter the beauty and skincare market.

101.    Moreover, Ms. Bieber's foray into the world of celebrity-sponsored product empires is very unlikely to stay within the confines of the beauty industry alone.  Defendants'

recent trademark applications, which are outside the cosmetics space, indicate her plans to expand beyond cosmetics into apparel and other fashion related goods.  In fact, Ms. Bieber has already indicated that "clothes will come."

102.    Such an expansion into clothing is expected and anticipated (and here being cheered on) by consumers.  Other celebrities have done the same.  For instance, Gwyneth Paltrow's brand, GOOP, markets and sells lifestyle products including, among other things, both fashion and skincare; Kim Kardashian—with whom Ms. Bieber has consulted about her aspirations according to an April 7, 2022 article in Fashion Week Daily, started her product empire with garments under the label SKIMS, and recently announced plans to expand into cosmetics with SKKN; Kylie Jenner first sold clothing under the label Kylie + Kendall, and now sells beauty products under the brand Kylie Cosmetics; and Rihanna sells cosmetics under the brand name Fenty and undergarments under the label Savage x Fenty.

103.    In a June 2022 article in *Forbes* magazine, Ms. Bieber indicated her intent to expand the brand, telling a reporter that her five-year plan for the brand is to build an "empire."

104.    Defendants' use of "rhode" will likely make it much more difficult, if not impossible, for Rhode to partner and/or collaborate with other brands in the future.  Collaborations between fashion brands and skincare brands, in particular, are common, as demonstrated by brand partnerships between luxury cosmetics brand Aveda and global fashion label 3.1 Phillip Lim, Lancôme and Sonia Rykiel, and Sephora Collection and Mara Hoffman (see below).  As noted above, Rhode successfully collaborated with Shopbop on an activewear collection, which was a great success for both brands and Rhode has other collaborations with large retailers already planned.  If Defendants are using "rhode",  Rhode is less likely to convince potential collaborators to partner, as doing so could also subject their brands to reverse confusion.  Moreover, the value

of such collaborations will be significantly diminished, as Rhode uses collaborations to increase

brand awareness, but with Defendants' infringement, consumers will likely assume that it is Ms.

Bieber's brand, and not Rhode, that has collaborated with other, recognizable brands.



Keeping in mind sustainability, the collaboration between beauty brands Aveda and 3.1 Phillip Lim is aimed at all things environmentally friendly.

The luxury cosmetics brand and the global fashion label launched a collection of gift items, hair accessories and designer packaging products for the holiday season.

The products are cruelty-free and are made with a 100 per cent organic ingredients. According to the official website of 3.1 Phillip Lim, they "used materials like 100% organic cotton for the hair towel, 100% recycled plastic for the scrunchies and 95% recycled materials for the comb."

The hair and skincare products are vegan and are made with renewable energy resources.



105.    Department stores and wholesalers typically list brand names in alphabetical order,

in uniform font.   Meaning, should "rhode" expand beyond direct-to-consumer sales, which is

likely, the stores would list one brand, "Rhode," followed by the other brand, "Rhode."   Rhode

customers who click on the wrong Rhode brand link will be directed to Ms. Bieber's products, not

to Plaintiff's, and Plaintiff may lose a sale.  It is also possible that these stores and sellers decide it is too confusing to carry both brands.  Most likely, they would excise Plaintiff in favor of Defendants given Ms. Bieber's celebrity status.

106.    Defendants' infringement harms Plaintiff by eroding the value of the company as a whole.  Ms. Khatau, Ms. Vickers and their team have built the brand from less than $100,000 in sales in its first year of business to projected sales of approximately $14.5 million for the year 2022 and $20 million in 2023—an incredible rate of growth over less than a decade.  Despite their accomplishment, no reasonable buyer or investor is likely to purchase or back a brand that's entire brand identity has been eclipsed by a celebrity brand with an identical name.

107.    If Defendants are permitted to continue their infringement, the risk to Rhode is existential:  the brand may very well be erased.

## COUNT I
## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

108.    Rhode repeats and re-alleges the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

109.    Defendants' use of Plaintiff's RHODE Marks without the authorization or consent of Rhode in connection with the sale, offering for sale, and distribution of Defendants' Goods constitutes a use in interstate commerce that is likely to cause confusion, deception and mistake by buyers and the consuming public.

110.    Defendants' acts create a likelihood that a false and unfair association will be made between Defendants, Defendants' Goods and Rhode, so that the purchasing public is likely to believe that Rhode's Goods are actually Defendants' Goods or vice versa, that Rhode is authorized by Defendants to sell goods for Defendants or that Defendants are authorized by Rhode, and/or

that Rhode and Rhode's Goods are otherwise affiliated with or sponsored by Defendants or that Defendants are affiliated with or sponsored by Rhode.

111.    These acts by Defendants constitute trademark infringement under 15 U.S.C. § 1114.

112.    Upon information and belief, instances of actual confusion have occurred where consumers believed Rhode and Ms. Bieber's "rhode" were affiliated or otherwise endorsed by one another and where images of Rhode products were falsely identified as Ms. Bieber's.

113.    Defendants' use of "rhode" was made intentionally and with full knowledge of Rhode's prior and superior rights in the RHODE Marks.

114.    Defendants' acts have caused and, if allowed to continue, will continue to cause Rhode to suffer substantial irreparable harm in the nature of loss of the value of the RHODE Marks, its product identity, corporate identity, control over its goodwill and reputation and ability to move into new markets.  This irreparable harm will continue without any remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

115.    As a result of the foregoing, Rhode has suffered actual damages and Defendants have been unjustly enriched.

116.    Defendants' actions have been extraordinary, willful and in bad faith entitling Rhode to treble damages, attorneys' fees and costs of suit and to such other and further relief, as the Court may deem appropriate.

## COUNT II
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A)

117.    Rhode repeats and realleges the allegations of the foregoing paragraphs of its Verified Complaint as if fully set forth herein.

118.    Defendants' use of Plaintiff's RHODE Marks and Plaintiff's "ontherhode" hashtag without authorization on or in connection with Defendants' Goods constitutes use in interstate commerce that is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Rhode with Defendants, such that consumers may believe that Rhode's products are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Defendants or vice versa.

119.    Defendants' acts constitute trademark infringement, false designation of origin and unfair competition in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

120.    Defendants' acts have been committed intentionally with full knowledge of Rhode's prior and superior rights in the RHODE Marks.

121.    Defendants' acts have caused and, if allowed to continue, will continue to cause Rhode to suffer substantial irreparable harm in the nature of loss of the value of the RHODE Mark, its product identity, corporate identity, control over its goodwill and reputation and ability to move into new markets.  This irreparable harm will continue without any remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

122.    In addition, as a result of the foregoing, Rhode has suffered actual damages and Defendants have been unjustly enriched.

123.    Defendants' actions have been extraordinary, willful and in bad faith entitling Rhode to treble damages, attorneys' fees and costs of suit and to such other and further relief, as the Court may deem appropriate.

### COUNT III
### TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW

124.    Rhode repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

125.    Defendants' use of Plaintiff's RHODE Marks is likely to confuse and deceive the public into believing that Rhode's Goods are actually Defendants' Goods or vice versa, that Rhode is authorized by Defendants to sell Rhode's Goods or that Defendants are authorized by Rhode to sell Defendants' Goods and/or that Rhode and Rhode's Goods are otherwise affiliated with or sponsored by Defendants or that Defendants Goods are sponsored by Rhode.

126.    Defendants' aforesaid acts constitute trademark infringement at common law.

127.    Defendants' acts have been committed intentionally with full knowledge of Rhode's prior and superior rights in the RHODE Marks.

128.    As a direct and proximate result of Defendants' aforesaid activities, Rhode has suffered irreparable harm, and unless Defendants are restrained from continuing its wrongful acts, the harm to Rhode will continue.  Rhode has no adequate remedy at law.

129.    As a result of the foregoing, Rhode has suffered actual damages and Defendants have been unjustly enriched.

**COUNT IV**
**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

130.    Rhode repeats and realleges the allegations in the foregoing paragraphs of the Verified Complaint as if fully set forth herein.

131.    Defendants' use of Plaintiff's RHODE Marks in connection with the offering for sale, distribution and sale of Defendants' Goods has caused or is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Rhode with Defendants, and/or as to the source, sponsorship or approval of Rhode or Rhode's Goods or Defendants or Defendants' Goods, in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe that Rhode is associated with or related to Defendants, that Rhode is authorized by Defendants to provide consumer products under the RHODE Mark, and/or that Rhode and its

Rhode's Goods are otherwise affiliated with or sponsored by Defendants or that Defendants are authorized or affiliated with Rhode.

132.    Defendants have intentionally and willfully disregarded Rhode's trademark rights, seeking to produce, market and sell products bearing Plaintiff's RHODE Marks in direct violation of Rhode's ownership of the marks and with knowledge of Rhode's prior and superior rights in the RHODE Marks.

133.    Defendants' acts alleged herein constitute unfair competition in violation of New York common law.

134.    Defendants' acts alleged herein have caused and, if allowed to continue, will continue to cause Rhode to suffer substantial irreparable harm.  Rhode has no adequate remedy at law.

135.    As a result of the foregoing, Rhode has suffered actual damages and Defendants have been unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, Rhode respectfully demands judgment:

(1)    That Defendants and their subsidiaries, parent(s), related companies, officers, agents, servants, employees, warehousemen, warehousers, distributors, attorneys, successors and assignees, and all persons in active concert or participation with any of them, be preliminarily, and permanently enjoined and restrained from:

        (a)    Imitating, copying or making unauthorized use of the RHODE Marks, trade name or domain name either standing alone or as part of any other name or mark;

        (b)    Using "RHODE" or any reproduction, counterfeit, copy, colorable imitation thereof, or any words confusingly similar, as a trademark, trade

name, domain name or otherwise in connection with the advertising,
display, sale, offering for sale or distribution of any products in any
medium, including but not limited to on the Internet or on Instagram or
other social media sites, in such a manner that is likely to cause confusion
or mistake or to deceive customers or the public or give the impression
that Rhode or their products or services originate with, are affiliated with,
are sponsored by, approved by, or in any way connected to Defendants;

(c)     Using as a name or mark "RHODE" or any variation thereon;

(d)     Using any name, mark, or false designation of origin, or false description,
or performing any act which can, or is likely to, lead members of the
public to believe that any service or product provided by Rhode is in any
manner associated or connected with Defendants or is sold, licensed,
sponsored, approved or authorized by Defendants;

(e)     Using "RHODE" as a metatag or in any hidden data, including but not
limited to, in conjunction with any internet searching tool;

(f)     Using the name "RHODE" alone or in combination with any other words
or letter, as a domain name on the Internet or as a handle on Instagram;

(g)     Engaging in any activity constituting unfair competition with Rhode, or
constituting an infringement of Rhode's trademarks or trade name;

(h)     Registering or applying to register as a trademark, service mark, trade
name, Internet domain name, or any other source identifier or symbol of
origin "RHODE" or any variation thereon or any other mark or name that

infringes on or is likely to be confused with Rhode's trademarks or trade name;

(i)     Shipping, importing, delivering, distributing, returning, or otherwise disposing of in any manner products or inventory bearing the RHODE Marks or any mark confusingly similar to the RHODE Marks without authorization by Rhode; and

(j)     Further infringing the RHODE Marks and damaging Rhode's goodwill and business reputation.

(2)     That Defendants immediately destroy any and all advertising, promotion, or marketing materials within their possession, custody or control that use the name or mark "RHODE."

(3)     That Defendants be required to account for all inventory or merchandise and other materials bearing the RHODE Marks or any mark confusingly similar to the RHODE Marks and that it be required to destroy that inventory.

(4)     That Defendants be required to recall from all retailers, distributors and wholesalers, all products, packaging, promotional, and advertising material of any kind bearing the name RHODE and any/or other colorable imitation of the RHODE Marks.

(5)     That Defendants be required to supply Rhode with a complete list of persons and entities from whom they purchased, and to whom they distributed and/or sold, products bearing the RHODE Marks or any mark confusingly similar to the RHODE Marks, if any.

(6)     That Defendants and all others in active concert or participation with Defendants take affirmative steps to dispel any false impression or confusion that has been created by Defendants' use of "RHODE" as a trade name, trademark, and domain name.

(7)     That Defendants, within 30 days after service of judgment, with notice of entry thereof upon them, be required to file with the Court and serve upon Rhode a written report under oath setting forth in detail the manner in which each has complied with paragraphs 1 through 6, above.

(8)     That Defendants be required to make an accounting of all profits, gains, and advantages that Defendants have derived as a result of their unlawful conduct.

(9)     That, pursuant to 15 U.S.C. § 1117(a), and the laws of New York, Rhode be awarded attorneys' fees, Defendants' profits, and damages suffered by Rhode.

(10)     That pursuant to 15 U.S.C. § 1117(a), Plaintiffs be awarded treble damages arising from Defendants' intentional and willful conduct.

(11)     That as provided for under the laws of New York, Plaintiffs be awarded punitive damages from Defendants' intentional and willful conduct.

(12)     That Rhode be granted such other and further relief as this Court may deem just and equitable.

## JURY DEMAND

Rhode demands a trial by jury of all issues triable as of right by a jury in this action.

Dated: June 20, 2022                    By: /s/ *Lisa T. Simpson*

Lisa T. Simpson
Christopher J. Cariello
Rochelle F. Swartz
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
lsimpson@orrick.com

*Attorneys for Plaintiff*
*Rhode-NYC*

## <u>VERIFICATION</u>

1.      I am the Chief Executive Officer of Rhode-NYC, LLC, the Plaintiff in this matter.

2.      The factual allegations in the foregoing Verified Complaint are true and correct, except for such allegations made upon information and belief, which I believe to be true and correct.

3.      I verify under penalty of perjury that the foregoing is true and correct.

_____
Purna Khatau

Dated:  June 20, 2022