UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                                      :
RHODE-NYC, LLC,                       :
                                      :
            Plaintiff,                :
                                      :
      vs.                             :   22-CV-5185 (LGS) (SLC)
                                      :
RHODEDEODATO CORP., et al.,           :
                                      :
            Defendants.               :
                                      :
------------------------------------- X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**<u>ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION</u>**

**Table of Contents**

**Page**

STATEMENT OF RELEVANT FACTS.................................................................. 2

I.      MS. BIEBER, RHODE SKIN, AND THE RHODE MARK. ........................... 2

II.     PLAINTIFF AND ITS RHODE CLOTHING.................................................... 4

III.    RHODE SKIN'S TRADEMARK APPLICATIONS AND INITIAL
        COMMUNICATIONS WITH PLAINTIFF. ..................................................... 6

IV.     LAUNCH OF RHODE SKIN AND THE INSTANT DISPUTE........................ 9

ARGUMENT ......................................................................................................... 10

I.      PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS FOR
        MULTIPLE REASONS.................................................................................... 11

        A.      Plaintiff Acquiesced to the Use of RHODE for Beauty and Wellness
                Products............................................................................................. 11

                1.      Plaintiff's April 28, 2021 Letter Constituted Active Consent. ................ 11

                2.      Plaintiff Inexcusably Delayed Until June 13, 2022 to Withdraw
                        Consent. ................................................................................. 13

                3.      Plaintiff's 14-Month Delay Prejudiced Rhode Skin. .............................. 14

        B.      Plaintiff Is Unlikely to Succeed in Making a Prima Facie Case for Any of
                Its Claims. ........................................................................................ 15

                1.      Plaintiff Does Not Have Priority Rights in a Distinctive Mark. .............. 15

                2.      There Is No Likelihood of Confusion Between the Parties' Marks......... 21

II.     PLAINTIFF FAILS TO ESTABLISH LIKELIHOOD OF IRREPARABLE
        HARM.............................................................................................................. 33

III.    THE BALANCE OF HARDSHIPS WEIGHS AGAINST AN INJUNCTION. ............. 34

IV.     A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST.................. 36

**Table of Authorities**

**Page**

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*,
 747 F.2d 81 (2d Cir. 1984)..................................................................................................18

*815 Tonawanda St. Corp. v. Fay's Drug Co.*,
 842 F.2d 643 (2d Cir. 1988)................................................................................................16

*Abraham Zion Corp. v. Lebow*,
 761 F.2d 93 (2d Cir. 1985)............................................................................................16, 31

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
 575 U.S. 138 (2015)............................................................................................................21

*BigStar Ent., Inc. v. Next Big Star, Inc.*,
 105 F. Supp. 2d 185 (S.D.N.Y. 2000)..............................................................18, 19, 20, 21

*Black & Decker Corp. v. Dunsford*,
 944 F. Supp. 220 (S.D.N.Y. 1996).....................................................................................18

*Boost Beauty, LLC v. Woo Signatures, LLC*,
 2022 WL 409957 (C.D. Cal. 2022).....................................................................................27

*Brennan's, Inc. v. Brennan's Rest., LLC*,
 360 F.3d 125 (2d Cir. 2004)..........................................................................................16, 36

*Bristol-Myers Squibb Co. v. McNeil-PPC, Inc.*,
 673 F.2d 1033 (2d Cir. 1992)..............................................................................................26

*Brockmeyer v. Hearst Corp*,
 248 F. Supp. 2d 281 (S.D.N.Y. 2003)...........................................................................23, 24

*Car-Freshner Corp. v. Am. Covers, LLC*,
 980 F.3d 314 (2d Cir. 2020)...............................................................................................22

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*,
 696 F.3d 206 (2d Cir. 2012)...............................................................................................15

*Citigroup Glob.Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
 598 F.3d 30 (2d Cir. 2010).................................................................................................10

*Clinique Labs., Inc. v. Dep Corp.*,
 945 F. Supp. 547 (S.D.N.Y. 1996).....................................................................................27

**Table of Authorities**
(Continued)

**Page**

*Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*,
    2018 WL 3407709 (S.D.N.Y. 2018) ...................................................22

*Custom Vehicles, Inc. v. Forest River, Inc.*,
    476 F.3d 481 (7th Cir. 2007) .........................................................16

*In re Deporter*,
    2019 WL 460492 (T.T.A.B. 2019) ...................................................19

*E.A. Sween Co. v. A & M Deli Express Inc.*,
    787 F. App'x 780 (2d Cir. 2019) .....................................................33

*Engine Cap. Mgmt., LP v. Engine No. 1 GP LLC*,
    2021 WL 1372658 (S.D.N.Y. 2021) ...........................................31, 33

*Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc.*,
    17 F. Supp. 2d 249 (S.D.N.Y. 1998) ...............................................36

*Fed. Exp. Corp. v. Fed. Espresso, Inc.*,
    201 F.3d 168 (2d Cir. 2000).............................................................11

*Fraga v. Smithaven MRI*,
    866 F. Supp. 107 (E.D.N.Y. 1994) ..................................................20

*Gross v. Bare Escentuals Beauty, Inc.*,
    641 F. Supp. 2d 175 (S.D.N.Y. 2008)..............................................27

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
    826 F.3d 27 (2d Cir. 2016)................................................................22

*Hello I Am Elliot, Inc. v. Sine*,
    2020 WL 3619505 (S.D.N.Y. 2020).................................................19

*Herbalife Int'l, Inc. v. Lumene N. Am., LLC*,
    2007 WL 4225776 (C.D. Cal. 2007).................................................27

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995) .................................................................33

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
    618 F. App'x 31 (2d Cir. 2015) ..................................................10, 33

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
    478 F. Supp. 2d 340 (E.D.N.Y. 2007) .............................................19

**Table of Authorities**
(Continued)

**Page**

*Juicy ZCouture, Inc. v. L'Oreal USA, Inc.*,
 2006 WL 1012939 (S.D.N.Y. 2006)................................................................27, 28

*Kelly-Brown v. Winfrey*,
 659 F. App'x 55 (2d Cir. 2016) ......................................................................16, 22

*Khan v. Addy's BBQ LLC*,
 419 F. Supp. 3d 538 (E.D.N.Y. 2019) ......................................................11, 12, 28

*Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*,
 192 F.3d 337 (2d Cir. 1999)...........................................................................16, 17

*Lang v. Ret. Living Publ'g Co.*,
 949 F.2d 576 (2d Cir. 1991)............................................................29, 30, 31, 32

*Lebewohl v. Heart Attack Grill LLC*,
 890 F. Supp. 2d 278 (S.D.N.Y. 2012)....................................................................28

*Limited v. Macy's Merch. Grp. Inc.*,
 2016 WL 4094913 (S.D.N.Y. 2016)........................................................................21

*In re Lingwall & Lingwall*,
 2019 WL 5079826 (T.T.A.B. 2019) ........................................................................17

*In re Locman S.p.a.*,
 2007 WL 411953 (T.T.A.B. 2007) ..........................................................................17

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
 209 F. Supp. 3d 612 (S.D.N.Y. 2016) ....................................................................19

*Mahender Sabhnani v. Mirage Brands, LLC*,
 2021 WL 6072822 (T.T.A.B. 2021) ........................................................................27

*Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*,
 65 F.3d 1063 (2d Cir. 1995) ....................................................................................20

*Mazurek v. Armstrong*,
 520 U.S. 968 (1997)..................................................................................................10

*Morgans Grp. LLC v. John Doe Co.*,
 2012 WL 1098276 (S.D.N.Y. 2012).......................................................................20

*N.Y. Stock Exch., Inc. v. Gahary*,
 196 F. Supp. 2d 401 (S.D.N.Y. 2002).....................................................................16

**Table of Authorities**
(Continued)

**Page**

*Nora Bevs., Inc. v. Perrier Group of Am., Inc.*,
269 F.3d 114 (2d Cir. 2001)................................................................31

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189 (1985)...........................................................................15

*Pilot Corp. of Am. v. Fisher-Price, Inc.*,
501 F. Supp. 2d 292 (D. Conn. 2007)...............................................22

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n*,
520 F.3d 109 (2d Cir. 2008)..............................................................13

*Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical
Therapy, P.C.*,
314 F.3d 62 (2d Cir. 2002)..................................................11, 12, 13

*Ptak Bros. Jewelry Inc. v. Ptak*,
2007 WL 1536934 (S.D.N.Y. 2007)..................................................17

*Real USFL, LLC v. Fox Sports, Inc.*,
2022 WL 1134487 (C.D. Cal. 2022)..................................................33

*Reply All Corp. v. Gimlet Media, LLC*,
843 F. App'x 392 (2d Cir. 2021) .............................................. *passim*

*Revlon, Inc. v. Jerell, Inc.*,
713 F. Supp. 93 (S.D.N.Y. 1989).................................................26, 27

*Riseandshine Corp. v. Pepsico, Inc.*,
2021 WL 5173862 (S.D.N.Y. 2021)..................................................35

*Rush Indus., Inc. v. Garnier LLC*,
496 F. Supp. 2d 220 (E.D.N.Y. 2007) ..............................................23

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am. Inc.*,
527 F. Supp. 3d 305 (E.D.N.Y. 2021) ..............................................21

*Sampson v. Murray*,
415 U.S. 61 (1974)............................................................................33

*Saratoga Vichy Spring Co. v. Lehman*,
625 F.2d 1037 (2d Cir. 1980)......................................................17, 18

*Sardi's Rest. Corp. v. Sardi*,
755 F.2d 719 (9th Cir. 1985) ............................................................36

**Table of Authorities**
(Continued)

**Page**

*Savin Corp. v. Savin Grp.*,
    391 F.3d 439 (2d Cir. 2004)............................................................................23, 33

*Saxon Glass Techs. Inc. v. Apple, Inc.*,
    824 F. App'x 75 (2d Cir. 2020) ....................................................................22, 29

*Scarves by Vera, Inc. v. Todo Imports, Ltd.*,
    544 F.2d 1167 (2d Cir. 1976)........................................................................26, 28

*Soter Techs., LLC v. IP Video Corp.*,
    523 F. Supp. 3d 389 (S.D.N.Y. 2021)...................................................................15

*Sports Auth., Inc. v. Prime Hosp. Corp.*,
    89 F.3d 955 (2d Cir. 1996)............................................................................23, 31

*Star Indus., Inc. v. Bacardi & Co.*,
    412 F.3d 373 (2d Cir. 2005)..........................................................................28, 31

*Sterling Drug, Inc. v. Bayer AG*,
    14 F.3d 733 (2d Cir. 1994)...................................................................................22

*Sussman v. Crawford*,
    488 F.3d 136 (2d Cir. 2007)................................................................................10

*Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*,
    437 F.2d 566 (2d Cir. 1971)................................................................................21

*In re Tapio GmbH*,
    2020 WL 6938377 (T.T.A.B. 2020) ...................................................................17

*Tiffany & Co. v. Costco Wholesale Corp.*,
    971 F.3d 74 (2d Cir. 2020)..................................................................................15

*Time, Inc. v. Petersen Publ'g Co.*,
    173 F.3d 113 (2d Cir. 1999)..........................................................................18, 22

*Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*,
    409 F. Supp. 2d 403 (S.D.N.Y. 2006)..................................................................14

*Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*,
    964 F. Supp. 733 (S.D.N.Y. 1997).......................................................................14

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)......................................................................................15, 17

**Table of Authorities**
(Continued)

**Page**

*Viamedia, Inc. v. WideOpenWest Fin., LLC*,
   2020 WL 3415356 (S.D.N.Y. 2020) ........................................................................34

*WarnerVision Ent. Inc. v. Empire of Cal., Inc.*,
   101 F.3d 259 (2d Cir. 1996) ........................................................................18, 35

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................10, 34, 36

**Statutes**

15 U.S.C. § 1116(a) ........................................................................33

Hailey Rhode Bieber spent years bringing her unique skincare line to market under her RHODE family name—a name inspired by, and passed down from, her great grandmother and her mother to her.  She did so in good faith, understanding that a crowded field of marks featuring "RHODE" already peacefully coexisted; after all, RHODE is a common family name.

Recognizing that each side could use RHODE for its respective goods, Plaintiff itself consented to Ms. Bieber's use of RHODE for beauty products in Class 3, a Patent & Trademark Office ("**PTO**") category covering personal care products (like skincare), while Plaintiff would use RHODE for clothing in Class 25.  This occurred in April of 2021—14 months prior to the recent launch of the business by Ms. Bieber's companies, Defendants Rhodedeodato and HRBeauty (collectively, "**Rhode Skin**").  Specifically, Plaintiff's counsel then wrote:

> Plaintiff's "primary concern, among others, is that a likelihood of confusion would inevitably arise if [Rhode Skin] use[d] the 'RHODE' mark for clothing and related goods in Class 25.  Therefore, at this time, we will be monitoring [Rhode Skin's] use of the marks to ensure that [it] continue[s] to refrain from using the RHODE mark for the related goods in Class 25, and use[s] the RHODE mark only for the **beauty and wellness goods** in Class 3 as listed in [its] applications…"

Declaration of Purna Khatau ("**PK Decl**.") Ex. 16. (emphasis in original).  Relying on these written assurances, Rhode Skin spent the ensuing 14 months developing, manufacturing, marketing and launching a skincare line that was released on June 15, 2022.  None of the Defendants have developed a clothing line under the RHODE mark.  And none plan to, as explained below.  In short, this case is not about overlapping clothing labels called RHODE or competing products.

In addition to relying on Plaintiff's representations, before developing its RHODE-branded skincare, Rhode Skin had marshalled its "intent-to-use" trademark applications for RHODE through the open review process of the PTO—a process created by Congress to help businesses identify conflicts with a chosen brand *before* investing substantial resources in it—to avoid exactly the problem Rhode Skin now faces.  The PTO reviewed the parties' respective marks and

1

ultimately found no conflict between Rhode Skin's RHODE mark for beauty products and Plaintiff's RHODE mark for clothing. It also afforded Plaintiff (and anyone else) the opportunity to oppose Rhode Skin's applications, yet Plaintiff never did so. Nor did any of the other coexisting RHODE marks. As a result, Rhode Skin will soon own U.S. registrations for RHODE in Class 3.

After acknowledging Rhode Skin's planned use of RHODE for skincare and then going silent for over a year, and after missing its window to oppose Rhode Skin's applications, Plaintiff sent a cease and desist letter merely two days before Rhode Skin launched, and a week later asked this Court to issue a preliminary injunction. It did this not knowing whether anyone seeking to buy its high-end clothing was actually confused by Ms. Bieber's eponymous skin care products.

Plaintiff's claims are likely to fail on the merits for at least three reasons. First, Plaintiff acquiesced to the very use of which it now complains. Second, Plaintiff's chosen mark is a surname, and the Lanham Act does not permit users of surname marks to prevent others from adopting them without timely acquiring "secondary meaning," which Plaintiff did not. Third, to prove a "likelihood of confusion," Plaintiff must show that an appreciable number of consumers will mistakenly believe one party's goods are offered by or affiliated with the other, even though the PTO found this improbable. A comparison of Plaintiff's boldly-colored seasonal clothing that, until a couple of years ago, was called RHODE RESORT, and Rhode Skin's sleek, minimalistic skincare that is consistently marketed as "by HAILEY RHODE BIEBER," shows this is unlikely.

STATEMENT OF RELEVANT FACTS

## I.      Ms. Bieber, Rhode Skin, and the RHODE Mark.

Hailey Rhode Bieber is a model, public personality, and entrepreneur. Declaration of Hailey Rhode Bieber ("**HRB Decl.**") ¶¶ 2, 5. She is known for candid and authentic videos discussing health and selfcare, conversations with famous guests, and skincare and makeup tutorials. *See generally* www.youtube.com/c/haileyrhodebieber. Rhode Skin is her first product

2

line and significant entrepreneurial venture.  HRB Decl. ¶ 5.

Rhodedeodato Corp. ("**Rhodedeodato**") was formed by Ms. Bieber in 2015 when she was 18 years old.  *Id.* ¶ 8.  HRBeauty LLC ("**HRBeauty**") was formed in March of 2021 to be Rhodedeodato's licensee to develop its skincare business under the RHODE mark.  *Id.* ¶ 14. Following an assignment from Rhodedeodato, it is the current owner of the mark.  *Id.*

Around 2018, Ms. Bieber began planning to launch a skincare line.  *Id.* ¶¶ 5, 12.  She also considered starting a clothing company.  *Id.* ¶ 5.  When weighing potential names, Ms. Bieber sought a mark that would immediately associate the products with her personal brand and benefit from her well-developed and valuable rights of publicity.  *Id.* ¶ 6.

She explored using BIEBER BEAUTY, but the PTO denied registration of that mark, finding a likelihood of confusion with marks registered by her husband, musician Justin Bieber. *Id.* ¶ 7.  Unable to use her legal surname, she selected her legal middle name, "Rhode," which is also her mother's middle name and a name in her mother's family for generations.  *Id.* ¶¶ 2, 8.  She had used "Rhode" professionally for some time, including in the name of Rhodedeodato.  *Id.* ¶ 8.

As detailed below, the PTO approved Rhodedeodato's applications to register RHODE for beauty and wellness products in Class 3, finding no likelihood of confusion with Plaintiff's RHODE mark for clothing in Class 25.  In light of the PTO's approval and a later letter from Plaintiff acquiescing to Rhode Skin's planned use of RHODE in the beauty and wellness category, Rhode Skin took up the massive undertaking of creating a skincare line from scratch.  *Id.* ¶¶ 12, 14, 17.  It launched on June 15, 2022 with three products: Peptide Glazing Serum ($29), Barrier Restore Cream ($29), and Peptide Lip Treatment ($16).  Declaration of Claudia Allwood ("**CA Decl.**") ¶ 2.  It almost sold out that day.  *Id.*

The products are available online only through rhodeskin.com.  *Id.* ¶ 49.  The website and

nearly all advertising prominently features Ms. Bieber and reinforces that "Rhode Skin" is "by Hailey Rhode Bieber." *Id*. ¶ 53; Declaration of Kayla Blaker ("**KB Decl.**") Ex. 5.

The philosophy of the brand focuses on minimalism and sustainability, and the brand's visual aesthetic reflects that philosophy. CA Decl. ¶ 49. A consistent color palate of muted grays and creams characterizes the product packaging, website, and other marketing assets. *See* KB Decl. Exs. 1–3; PK Decl. Ex. 27. The packaging and visual graphics are sleek and understated. *Id*. When appearing as the face of the brand, Ms. Bieber wears a plain white cotton tank top with the word "rhode" in small letters, with little makeup to reflect the brand's "less is more" message (as well as the idea of natural, unadorned, healthy skin). KB Decl. Exs. 1, 3; ECF 17 ("**Mot.**") at 8–9. RHODE consistently appears in distinctive, lower-case rounded font, usually set against a sizeable background of gray or cream. KB Decl. Exs.1–4. In every respect, the context in which Rhode Skin's mark appears is opposite from Plaintiff's brand. *See also* CA Decl. ¶¶ 49–50.

## II.    Plaintiff and Its RHODE Clothing.

Plaintiff sells expensive warm-weather vacation wear for women. Its dresses range from $375 to $625 and tops and skirts from $225 to $325. *Id*. Ex. 6. It is sold at places like Saks Fifth Avenue, Neiman Marcus, Bergdorf Goodman, and Bloomingdales, and through "online retailers of luxury brands—including MatchesFashion, Net A Porter, and Revolve[.]" PK Decl. ¶ 8.

Plaintiff's clothing is typified by saturated colors and large prints that Plaintiff calls "vintage," and "globally inspired," and which often evoke tablecloth or upholstery patterns. *Id*. ¶¶ 4, 7, Ex. 4; Declaration of Phoebe Vickers ("**PV Decl**.") Exs. 1, 5; KB Decl. Exs. 5–8. Its homepage currently features a model wrapped in a busy flower print behind a picnic table adorned with a matching tablecloth. KB Decl. Ex. 5. Most pieces feature flouncy, hyper-feminine silhouettes, often with generous swaths of fabric forming into wide gathered skirts or puffy leg-of-mutton or balloon-style sleeves. PV Decl. Ex. 5, Ex. 8 at 10; PK Decl. ¶ 6; KB Decl. Exs. 6–

9.  Its marketing echoes the print and color themes of the clothing: sales spaces decorated with clashing printed wallpapers in yellow and pink; and a pink, orange, and green color scheme for its website.  KB Decl. Exs. 5, 10.  The overall impression is of excess—in cuts, colors, and prints.  It is the virtual opposite of the sleek visuals, muted colors, and minimalist aesthetic of Rhode Skin.

Plaintiff's branding and advertising emphasizes exclusive travel destinations and its resortwear roots.  PK Decl. Ex. 1 at 1 ("[T]his is a label closely aligned with luxury travel—Positano and Santorini are often the backdrops to these designs."); PV Decl. Ex. 4 at 3–4; KB Decl. Exs. 11, 13–14.  It frequently references the company's genesis "over sunset cocktails in Goa."  KB Decl. Exs. 13–14, 18; *see also* PK Decl. ¶ 4.  Its play-on-words hashtag "#ontherhode" also suggests travel, and its posts evoke destinations frequented by wealthy elites.  PV Decl. ¶ 6 ("'On the Rhode'...was the perfect play on words given our brand's focus on global travel and incorporating style from faraway places."); KB Decl. Exs. 5, 11; PV Decl. Ex. 4 at 3–4.

For its first five years, Plaintiff did not use the mark RHODE.  Instead, it used RHODE RESORT.[1]  RHODE RESORT was on its labels, its website was rhoderesort.com, and for years, its only trademark registration was for RHODE RESORT.  KB Decl. Exs. 12, 20, 85, 86; Compl. ¶¶ 33–34.  In March of 2019, Plaintiff announced it would drop the "RESORT."  KB Decl. Ex. 15.  To this day, however, it is still called RHODE RESORT in multiple channels.  *Id*. Exs. 13, 14, 87.

While Plaintiff now offers bags and household items, it is still primarily known for resortwear.  *See id.* Ex. 18 (Rhode "is an eclectic lineup of floaty...dresses, printed kaftans, and elegant coverups that will enhance any warm-weather getaway."); *id*. Ex. 14.  Only recently has it moved to expand to other kinds of clothing, announcing its upcoming "first activewear collection."  PV Decl. ¶ 15, Ex. 10 at 1.  It is unclear when it will be available or what it will entail.

---

[1] In its filings, Plaintiff attempts to obscure this fact with vague language.  *See, e.g.*, PK Decl. ¶ 5 ("We launched our RHODE brand in 2013 using the label RHODE Resort….").

Details about the size and ownership of Plaintiff's business are vague. While its CEO claims $9 million in sales in 2021, she provides no documentation of its revenues or volume. *See* PK Decl. ¶ 15. Other than alleging ~$100,000 in sales in its first year of operation (presumably 2014), *id*., Plaintiff provides no other historical sales, revenue, or financial data.

Irrelevantly (and apparently as part of a publicity effort), Plaintiff repeatedly extols that it is women-owned. *See, e.g.*, PK Decl. ¶ 63; Compl. ¶ 3; KB Decl. Ex. 19. Rhode Skin is likewise the product of female entrepreneurialism, but that is neither here nor there for purposes of this case. In any event, Plaintiff's corporate disclosure statement says that Ms. Vickers owns some undisclosed portion of it and it is otherwise owned by a holding company, that is in turn owned by "Silk International," which is itself owned by the "Shiva Foundation." ECF 16. These entities are allegedly registered in the United Arab Emirates; their members or owners are unknown. *See id*.

### III.   Rhode Skin's Trademark Applications and Initial Communications with Plaintiff.

When Ms. Bieber first decided to use the RHODE mark in 2018, she was unaware of Plaintiff or its RHODE RESORT mark. HRB Decl. ¶ 10. Initially, she explored using RHODE for a clothing line, and on November 16, 2018, Rhodedeodato filed an application for a stylized, logo form of RHODE covering clothing in Class 25 (U.S. Serial No. 88/197,057). *Id*. ¶ 9.

Shortly before it filed that application, a trademark search turned up Plaintiff's registrations for RHODE and RHODE RESORT. *Id*. ¶ 11. Further investigation revealed, however, that Plaintiff was using only the mark RHODE RESORT. *Id*.; *see also* PK Ex. 15 at 1. Thus, the same day Rhodedeodato filed its application, its counsel contacted Plaintiff's counsel. *See* PK Decl. Ex. 12. He informed Plaintiff that his client was proposing to use a stylized form of RHODE for clothing, and that, although Ms. Bieber did not believe there was a likelihood of confusion, she would nonetheless be interested in a coexistence agreement. *Id*. at 4.

As an alternative to coexistence, he suggested that his client could acquire the RHODE

*registration*, given that Plaintiff was not using that mark: "if your client [Rhode-NYC] prefers, i.e., in view of the focus of your client's commercial efforts upon the RHODE RESORT brand," he wrote, Ms. Bieber might "acquir[e] your client's U.S. trademark registration for RHODE." *Id*. He did *not* offer to buy the *mark*, contrary to what Plaintiff claims. *Compare id*. *with* Mot. at 6. This is a material difference as a matter of trademark law: to validly transfer the RHODE trademark, Plaintiff would need to assign the goodwill—and an ongoing business—identified by the mark. *See* McCarthy on Trademarks and Unfair Competition ("**McCarthy**") § 18:2 (5th ed.). But Ms. Bieber was not trying to buy Plaintiff's business—only the registration reflecting a brand not in use, so it could be removed as a potential obstacle to Rhodedeodato's Class 25 application.

Plaintiff responded that it was uninterested but made no demand for Rhodedeodato to abandon its application covering clothing, or to refrain from using RHODE. PK Decl. Ex. 13. In April 2019, Rhodedeodato did expressly abandon it, however, after the PTO found a likelihood of confusion with the marks in Plaintiff's registrations. *See id*. Ex. 14 at 41–42; HRB Decl. ¶ 11.

Rhodedeodato then filed other applications in an effort to find available brands derived from Ms. Bieber's name. These included HAILEY RHODE for clothing in Class 25, filed in August 2019, and RHODE for beauty and wellness goods, only, in Class 3 (No. 88/788,199) (the "**Class 3 Application**"), filed February 6, 2020. HRB Decl. ¶¶ 12–13; PK Decl. Ex. 14 at 22–23.

On June 4, 2020, the PTO issued an initial refusal to register the Class 3 Application, citing a likelihood of confusion with Plaintiff's RHODE registration. KB Decl. Ex. 21. *But it later withdrew that refusal*, *id*. Ex. 84, after Rhodedeodato pointed out that there were several marks that included RHODE or RHODES for similar goods coexisting on the PTO register. *Id*. Ex. 22.

On July 22, 2020, the PTO issued an official notice to Rhodedeodato stating that its "mark appears to be entitled to register on the Principal Register" and announced that the Class 3

Application would be published for opposition on August 11, 2020. *Id*. Ex. 22. The opposition period came and went, and neither Plaintiff nor anyone else opposed. *Id*. Ex. 23. On October 6, 2020, the PTO issued a Notice of Allowance, meaning that the mark would register once the RHODE products launched and Rhodedeodato filed a statement of use in commerce. *Id*.

After the PTO cleared the RHODE mark for registration, Rhode Skin invested fully in developing its skincare line, and did not expect to hear anything further from Plaintiff. HRB Decl. ¶ 17. After all, Plaintiff did not and does not sell beauty or wellness products, and it had not filed an opposition to the Class 3 Application nor voiced any other objection to it. And Rhode Skin was right—for the remainder of 2021 and the first quarter of 2022, Plaintiff remained silent.

Then, out of the blue, on April 15, 2021, Plaintiff sent a letter demanding that Rhode Skin abandon the Class 3 Application, as well as an application filed in December 2020 for the stylized RHODE logo, also in Class 3. PK Decl. Ex. 14. In a response sent the next day, Rhode Skin's counsel emphasized that it had no plans to use the RHODE mark for clothing. *Id*. Ex. 15. It might use HAILEY RHODE for clothing, but RHODE only for beauty and wellness goods in Class 3, as reflected in its pending U.S. applications. *Id*. He also explained that Plaintiff's rights in RHODE for clothing did not preclude his client's use of RHODE for beauty and wellness products. *Id*.

On April 28, 2021, Plaintiff responded, <u>dropping its demand that Rhode Skin abandon its applications or plans for RHODE for beauty and wellness goods.</u> *Id*. Ex. 16. It stated, in part:

> [W]e appreciate your confirmation that your clients have ceased their "plans to proceed with a line of **clothing** under the 'RHODE' brand."....Our client, RHODE-NYC, LLC's ("Rhode") primary concern, among others, is that a likelihood of confusion would inevitably arise if your clients use the "RHODE" mark for clothing and related goods in Class 25. Therefore, at this time, we will be monitoring your clients' use of the marks to ensure that your clients continue to refrain from using the RHODE mark for related goods in Class 25, and use the RHODE mark only for the **beauty and wellness goods in Class 3 as listed in their applications** and represented in your email. However, Rhode reserves its right to contest your clients' use of the mark HAILEY RHODE, RHODE, or any other mark that includes the

word RHODE, if such use creates a likelihood of confusion in the future.

*Id.* at 1 (emphasis added).  Rhode Skin reasonably understood from this written assurance that Plaintiff would not object to its planned "use [of] the RHODE mark only for the beauty and wellness goods in Class 3," just as the letter said.  HRB Decl. ¶ 16.  And Ms. Bieber understood that HAILEY RHODE would be acceptable for a clothing label, as reflected in the pending application for that mark.  *Id.*  Rhode Skin's counsel wrote back, confirming this understanding: "We note that your client is no longer demanding that our clients 'cease and desist,' but rather has 'changed its tune' and is now merely putting our clients on notice that it will be 'watching' them." PK Decl. Ex. 17 at 1.  Plaintiff did not respond, object or otherwise challenge the common understanding that emerged in late April 2021 from this exchange between lawyers.

Accordingly, in reliance on Plaintiff's representations, over the next year, Rhode Skin invested fully in branding, developing, and promoting its RHODE skincare.  *Infra* 14.

## IV.  Launch of RHODE SKIN and the Instant Dispute.

The launch of Rhode Skin was planned and publicized for months in advance, and it would not have escaped the notice of anyone who was "monitoring" Rhode Skin.  *Infra* 13.  Significant media coverage began in late 2021, followed by another burst in early February 2022.  *Id.* n.5.

Months in advance of the launch, Rhode Skin held photo shoots to create branding assets and digital content featuring RHODE, planned a launch party, and booked Ms. Bieber's launch-day media appearances, including on *The Tonight Show with Jimmy Fallon* and *Good Morning America*.  CA Decl. ¶¶ 7–13, 35, 38.  By May 2022, all launch-day inventory was ready.  *Id.* ¶ 29.

Suddenly, less than two days before launch, and **<u>nearly 14 months</u>** after Plaintiff said that it would allow use of RHODE for beauty and wellness products, it abruptly reversed position.  In a June 13, 2022 letter, Plaintiff's counsel insisted that "[c]onfusion between our client's RHODE mark and Ms. Bieber's use of 'RHODE' is inevitable," and demanded Rhode Skin select a new

mark.  PK Decl. Ex. 18 at 2.  Plaintiff demanded a response by 5 pm ET the next day, June 14, *id.* at 4, leaving little time to prepare a response and none to try to negotiate a resolution with Plaintiff.

In its June 13 letter, Plaintiff accused Rhode Skin of planning to use RHODE as a trademark for clothing, citing images of Ms. Bieber with "rhode" shirts, and a trademark application HRBeauty had filed in May for an array of items, including clothing. *Id.* at 3–4.  The shirts, however, were merely promotional items for Ms. Bieber and her skincare line and were not being sold (nor will they be), and to prove the point that clothing was not being contemplated, that application has now been abandoned.  HRB Decl. ¶ 23.  In any case, however, Plaintiff's demand was not confined to clothing, but it also extended to the skincare line.  PK Decl. Ex. 18 at 4.

On June 15, 2022, Rhode Skin launched as planned.  HRB Decl. ¶ 22.  On June 21 and 22, Plaintiff filed its complaint and the instant motion.  ECF 1, 17.  As further described below, the requested emergency relief is unwarranted and would cause extreme hardship to Rhode Skin.

ARGUMENT

"A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, (1997)).  The movant "must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief."  *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (same).  In the Second Circuit, an alternative to this "*Winter*" standard allows the movant to show "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in its favor, along with irreparable harm. *Citigroup Glob. Mkts., Inc.*

10

*v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 35 (2d Cir. 2010).[2]

In deciding a motion, the court does not accept the allegations of the complaint as true, but instead determines whether plaintiff has proven the necessary facts "by a preponderance of the evidence." *Fed. Exp. Corp. v. Fed. Espresso, Inc*., 201 F.3d 168, 177 (2d Cir. 2000).

## I.      Plaintiff Is Unlikely to Succeed on the Merits for Multiple Reasons.

Plaintiff is unlikely to succeed on the merits because (1) its claims will be barred by the defense of acquiescence, and (2) it will fail to establish the two elements required for all of its claims: (i) enforceable rights in a distinctive mark, and (ii) a likelihood of confusion.

## A.      Plaintiff Acquiesced to the Use of RHODE for Beauty and Wellness Products.

The Second Circuit has "long held in the context of trademark actions that where a person entitled to exclusive use of a trademark ... acquiesces in the latter [user]'s use—a court of equity has the discretionary power to deny injunctive relief or an accounting." *Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy, P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) (quotation omitted).  The defense of "acquiescence" applies if  "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.* (quotation omitted).[3]   Acquiescence excuses "any resulting likelihood of confusion" foreseeable from the use. *Id.* at 69.

### 1.      Plaintiff's April 28, 2021 Letter Constituted Active Consent.

The first element is established by "active consent," which is "implied by conduct on the plaintiff's part that amount[s] to an assurance to the defendant, express or implied, that the plaintiff

---

[2] The movant's "overall burden" under such standard is "no lighter than the one it bears under the 'likelihood of success' standard" because it "must additionally establish that the balance of hardships tips *decidedly* in its favor[.]" *Id.* (quotation omitted; emphasis in original).

[3] The defense of acquiescence is available for both Plaintiff's federal and New York common law clams.  *See Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 563 (E.D.N.Y. 2019).

would not assert his trademark rights against the defendant." *Profitness*, 314 F.3d at 68 (quotation omitted). In *Profitness*, the plaintiff had sent a cease and desist letter, and in response the defendant had proposed to modify its mark. *Id*. at 65–66. The plaintiff did not respond, so the defendant followed with another letter stating: "[i]n the event that you do not respond, we will proceed as planned with our change of corporate name." *Id*. at 66. The plaintiff did not respond, and the defendant modified its mark as proposed. *Id*. About a year later, the plaintiff sent another demand letter and shortly thereafter sued. *Id*. The Court held that the plaintiff had acquiesced to defendant's modified name because "it was reasonable for defendant to rely on plaintiff's silence as consent to its good faith offer of accommodation to do business under a new mark." *Id*. at 69.[4]

Here, Rhode Skin responded to Plaintiff's initial, April 15, 2021 letter by stating it would refrain from using RHODE as a mark for clothing. PK Decl. Ex. 15 at 2. Plaintiff's consent was even clearer than that of the plaintiff in *Profitness*, who had responded only with silence. Plaintiff stated that Rhode Skin's "confirmation" that it had "ceased [its] plans to proceed with a line of clothing under the 'RHODE' brand" addressed Plaintiff's "primary concern." *Supra* 8. "Therefore" Plaintiff would "monitor" Rhode Skin to "ensure" it "use[d] the RHODE mark only for the **beauty and wellness** goods in Class 3 as listed in [its] applications[.]" *Id*. The only reasonable interpretation of this is that, while the use of RHODE for goods in Class 25 might be objectionable, Plaintiff would not object to "use [of] the RHODE mark ... for beauty and wellness goods in Class 3[.]" Rather, it would only "monitor" to ensure use remained in that category.

While the last sentence of the paragraph purports to reserve Plaintiff's rights, *supra* 8-9, Rhode Skin's counsel responded with his understanding that there was no longer a "cease and desist" demand to refrain from the uses in the pending applications, *i.e.*, RHODE for skincare, and

---

[4] The Court of Appeals overturned the grant of summary judgment for defendant on this defense only because the district court had failed to analyze whether the acquiescence extended to a new office opened by the defendant. *Id*.

HAILEY RHODE for clothing.  *Id.* Ex. 17.  Plaintiff did not clarify or correct him; *see ProFitness*, 314 F.3d at 68 (rejecting argument that "defendant ... acted at its peril" after receiving letter).  Thus, the first element of acquiescence is established.

### 2.    Plaintiff Inexcusably Delayed Until June 13, 2022 to Withdraw Consent.

After the April 28, 2021 letter, Plaintiff waited nearly 14 months, until only two days prior to Rhode Skin's launch, to abruptly reverse its position.  PK Decl. ¶ 30, Ex. 18.  This delay was inexcusable.  *See Profitness*, 314 F.3d at 66 (delay of about a year supported acquiescence).

Plaintiff must have known that Rhode Skin was pursuing its plans for RHODE during this time.  Back in April of 2021, it had said it would be "monitoring" Rhode Skin, PK Decl. Ex. 16, and its own exhibits include Instagram posts about Rhode Skin preparing for launch, including one from as early as **August 26, 2021** featuring Rhode Skin's new office.  *Id.* Ex. 27 at 5–6.  Rhode was also covered by the media, including on November 22, 2021 in *Allure* and *People*, and February 1, 2022 in *W Magazine* and *The Wall Street Journal*.[5]  In fact, Plaintiff's own submission shows it had reversed its position at least two months prior to June 13: in a text to a journalist on April 10 about Ms. Bieber's use of RHODE, Ms. Vickers stated: "It's shocking regarding Hailey right?  Very disappointed about the whole thing."  PV Decl. ¶ 19, Ex. 11.

Plaintiff suggests that recent "actual confusion" necessitated its action on June 13, 2022, but this explanation fails.  First, the existence of actual confusion is not part of the test for acquiescence, and it does not affect whether the defense is established.  *See PRL USA Holdings, Inc. v. U.S. Polo Ass'n*, 520 F.3d 109, 113 (2d Cir. 2008); *ProFitness*, 314 F.3d at 69 (Plaintiff

---

[5] *Allure*, "Hailey Bieber Confirmed That Her Beauty Brand, Rhode, is Coming Soon" (Nov. 22, 2021); *People*, "Hailey Baldwin Confirms Rhode Beauty is 'Coming in 2022': 'Been in the Works for a Very Long Time'" (Nov. 22, 2021); *W Magazine*, "What We Know About Hailey Bieber's Beauty Brand Rhode" (Feb. 1, 2022); *Wall Street Journal*, "Hailey Bieber's Next Move" (Feb. 1, 2022).  *See also* PK Decl. ¶ 44, Ex. 26 (Plaintiff's email from Feb. 18, 2022 referencing the Wall Street Journal article).

acquiesced to "any resulting likelihood of confusion" foreseeable from the use to which it acquiesced). Second, none of the incidents constitute true "actual confusion." *See infra* 29–31. Third, the explanation is disingenuous, as several of the "incidents" occurred months, or even a year, prior to June 13, 2022. *Compare* PK Decl. ¶ 28 ("There was no confusion until just recently[.]") *with id.* Ex. 25 at 5 (Apr. 14, 2021) *and id.* Ex. 23 (Jan. 13, 2022) *and* KB Decl. ¶ 25, Ex. 24 (Feb. 2, 2022, Mar. 30, 2022). Plaintiff's delay is inexcusable.

### 3. Plaintiff's 14-Month Delay Prejudiced Rhode Skin.

Relying on Plaintiff's statement in its April 28, 2021 letter, Rhode Skin invested significant resources to build its skincare brand. It worked with a branding agency and freelancers to develop its brand identity, website, and other marketing assets. CA Decl. ¶¶ 6, 15, 19, 20. It created RHODE-branded packaging, and it held six separate product photoshoots—each involving weeks of pre- and post-production work. *Id.* ¶¶ 7–14, 25–28. It developed video content featuring celebrities and beauty influencers. *Id.* ¶ 17. It bought a billboard on Sunset Boulevard in Los Angeles. *Id.* ¶ 22. It scheduled valuable launch-day media appearances and events with key fashion publications, sent out VIP gifts featuring its products, and held a launch party with 200 guests. *Id.* ¶¶ 34–38. All costs for the launch had already been incurred by June 13. *Id.* ¶ 39.

The total costs of all of its careful preparation— that were incurred after Plaintiff acquiesced—exceeded ███████. *Id.* ¶ 40. As a result of its delay, Plaintiff "precluded the possibility that the defendant could effectively adopt an alternative marketing position." *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 753 (S.D.N.Y. 1997) (finding prejudice in context of laches). And much of its inventory may need to be discarded if an injunction issued, which would be both wasteful and in direct contradiction to Rhode Skin's commitment to sustainability. *See Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 410 (S.D.N.Y. 2006) (defendant prejudiced by "hundreds of thousands of dollars'

worth of merchandise that [it] may be unable to sell"); CA Decl. ¶¶ 29-31.  The prejudice to Rhode

Skin from Plaintiff's delay is clear, and Rhode Skin is likely to establish its acquiescence defense.

**B.**      **Plaintiff Is Unlikely to Succeed in Making a Prima Facie Case for Any of Its Claims.**

To prevail on its Lanham Act claims, a plaintiff "must demonstrate that (1) it has a valid

mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion

with that mark."  *Tiffany & Co. v. Costco Wholesale Corp*., 971 F.3d 74, 84 (2d Cir. 2020).

Plaintiff's New York common law claims must satisfy these same elements, except that its claim

for unfair competition also requires "an additional showing of bad faith."  *Soter Techs., LLC v. IP*

*Video Corp*., 523 F. Supp. 3d 389, 397 (S.D.N.Y. 2021); *Tiffany*, 971 F.3d at 96.

**1.**      **Plaintiff Does Not Have Priority Rights in a Distinctive Mark.**

Whether a mark is protectable requires the mark owner to show that it is "distinctive."

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc*., 696 F.3d 206, 216 (2d Cir.

2012).  "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and

capable of being protected if it *either* (1) is inherently distinctive or (2) has acquired distinctiveness

through secondary meaning."  *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 769 (1992).

To evaluate distinctiveness, courts classify marks into categories.  *Id*. at 768.  "Marks ... may be

(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."  *Id*.  Generic marks are

unprotectable; descriptive marks are protectable only if they acquire distinctiveness (also called

"secondary meaning.").  *Id*. at 769.  Marks in the other categories are "inherently distinctive."  *Id*.

That Plaintiff has registered its RHODE mark does not mean it is distinctive.  "The Lanham

Act expressly provides that before a mark becomes incontestable an opposing party may prove

any legal or equitable defense which might have been asserted if the mark had not been registered."

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985).  This includes a challenge

that it is "merely descriptive," or descriptive without acquired distinctiveness.  *Id*.

As explained below, Plaintiff's mark is descriptive, and it did not acquire distinctiveness before Rhode Skin's adoption of its own mark.

### a.      As a Surname, RHODE is Descriptive.

While Plaintiff references the presumption afforded by its registration, Mot. at 17, this "presumption of validity that federal registration confers evaporates as soon as evidence of invalidity is presented." *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  The "presumption of validity that registration creates is easily rebuttable, since it merely shifts the burden of production to the alleged infringer." *Kelly-Brown v. Winfrey*, 659 F. App'x 55, 60 (2d Cir. 2016) (quoting *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007)).  Rhode Skin provides evidence below that RHODE is descriptive, and so the "validity that federal registration confers [has] evaporate[d]." *Lane*, 192 F.3d at 345.

"[P]ersonal names—both surnames and first names—are generally regarded as descriptive terms which require proof of secondary meaning." *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988); *Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 131 (2d Cir. 2004) ("The name of a person, therefore, like other descriptive marks, is protectible only if it has acquired secondary meaning.").  This is true even if there is no one associated with the business with that name.  *Tonawanda*, 842 F.2d at 648.  As a leading treatise explains: "It makes no difference whether or not a person with the name ... is in fact associated with the business.  The key is whether the public will likely perceive the term as a personal name, not whether the public knows the roster of corporate personnel."  McCarthy § 13:2 (quotation omitted); *Lane*, 192 F.3d at 344 (The test is "how the purchasing public views the mark.").

A mark need not be a common surname for the public to perceive it as a surname.  *See, e.g.*, *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 105 (2d Cir. 1985) (LEBOW descriptive as a surname); *N.Y. Stock Exch., Inc. v. Gahary*, 196 F. Supp. 2d 401, 407 (S.D.N.Y. 2002) (GRASSO);

*Ptak Bros. Jewelry Inc. v. Ptak*, 2007 WL 1536934, at *6 (S.D.N.Y. 2007) (PTAK).  This is especially true when it resembles a more common name.  *See In re Tapio GmbH*, 2020 WL 6938377, at *14 (T.T.A.B. 2020).  Conversely, even a common surname may not be perceived as such if it has "well known meanings as a word in the language."  *Lane*, 192 F.3d at 345.

Here, the evidence shows that RHODE is likely to be perceived as a surname.  Census data shows over 3,500 people with that name, supporting its surname significance.[6]  *See In re Lingwall & Lingwall*, 2019 WL 5079826, at *3 (T.T.A.B. 2019) (197 directory listings for persons named "Lingwall" supported surname classification); *In re Locman S.p.a.*, 2007 WL 411953, at *2 (T.T.A.B. 2007) (same; 153 listings for "Mantovani").  RHODE is also a close variation of RHODES, which is the 343rd most common U.S. surname, belonging to more than 90,600 people.[7]  As RHODE has no "well known meanings as a word in the language," and Plaintiff's registrations are not "evidence of how the public actually views the mark," the preponderance of the evidence shows it is likely to be perceived as a surname.  *Lane*, 192 F.3d at 345–346; KB Decl. Ex. 25.

### b.    Because Its Mark Is Descriptive, Plaintiff Must Prove Secondary Meaning Prior to Rhode Skin's Filing Date.

A senior user of a descriptive mark does not own protectable rights *until* it acquires secondary meaning.  *See Two Pesos*, 505 U.S. at 769.  A junior user may therefore adopt the same mark up until that date.  *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980).  Even if the senior user later acquires secondary meaning, it still "could not prevent the use of that term by one whose use had begun before the secondary meaning was acquired."  *Id.*

When the junior user has a pending intent-to-use trademark application, it is the application filing date, called the "constructive use" date, that marks the deadline by which a senior user must

---

[6]   U.S. Census Bureau, Surnames Occurring 100 or more times, available for download at https://www.census.gov/topics/population/genealogy/data/2010_surnames.html (RHODE at row 9239).

[7]  See n.6 (RHODES at row 344).

acquire secondary meaning.  McCarthy § 16:34 (citing *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 227 n.12 (S.D.N.Y. 1996)).  "This is appropriate, since the constructive use date was intended by Congress to have the same effect as the earliest actual use at common law." *Id*.

That such an application is still pending does not change this.  Preliminary injunctive relief should not be used to stop an intent-to-use applicant from obtaining a registration that would otherwise issue during the pendency of the proceeding.  *See WarnerVision Ent. Inc. v. Empire of Cal., Inc.*, 101 F.3d 259, 262 (2d Cir. 1996).  Thus, an applicant can rely on its filing date as its relevant priority date when defending against a preliminary injunction.  *See id.*  Accordingly, because the Class 3 Application was filed on February 6, 2020, *supra* 7, Plaintiff must show secondary meaning in RHODE by that date to enforce against Rhode Skin's use of RHODE.[8]

### c.  Plaintiff Did Not Timely Acquire Secondary Meaning.

"Secondary meaning attaches when the name and the business have become synonymous in the mind of the public, submerging the primary meaning of the term in favor of its meaning as a word identifying that business." *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999) (quotation omitted).  It is a "'heavy' burden" for a plaintiff, because "[p]roof of secondary meaning entails vigorous evidentiary requirements." *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 202 (S.D.N.Y. 2000) (quoting *20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 90 (2d Cir. 1984)).  Evidence considered includes: (1) consumer studies, (2) attempts to plagiarize the mark, (3) advertising expenditures, (4) sales success, (5) unsolicited media coverage, and (6) length and exclusivity of the mark's use.  *Id*.  Here, the record does not support secondary meaning in Plaintiff's mark as of February 6, 2020.

***Consumer Studies.***  While "[c]ourts have long held that consumer surveys are the most

---

[8] For the same reasons, Plaintiff must show secondary meaning by August of 2019 to enforce rights against the use of the mark HAILEY RHODE.  *Supra* 7.

persuasive evidence of secondary meaning," *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638–39 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017), Plaintiff has offered no survey. *See Hello I Am Elliot, Inc. v. Sine*, 2020 WL 3619505, at *9 (S.D.N.Y. 2020) (denying preliminary injunction where plaintiff lacked a secondary meaning survey).

   ***Attempts to Plagiarize.***  This factor examines "intentional copying" of a mark, which is indirect evidence of its success. *See id.* at *10*.  Here, there is no evidence of intentional copying.

   ***Advertising Expenditures.***  If a plaintiff wishes to rely on advertising expenditures to support secondary meaning, it "must show that the advertisements involved [plaintiff's] mark and that those advertisements caused consumers to associate the product with [plaintiff]." *Id.* at *8; see also Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 345 (E.D.N.Y. 2007) (secondary meaning disfavored without "concrete evidence showing that [advertising] efforts succeeded in reaching the ... target audience"); *BigStar*, 105 F. Supp. 2d at 202 (unsupported allegation of $12 million in advertising expenditures "gives no indication of the relative success of those endeavors," even at preliminary stage).

   Until March of 2019, the only designation Plaintiff actually used *as a trademark* was RHODE RESORT. *Supra* 5.  Its #ontherhode hashtag was not trademark use. *See In re Deporter*, 2019 WL 460492, at *9 (T.T.A.B. 2019).  And, even if it were, the mark under analysis would be #ONTHERHODE, which is unquestionably distinct from RHODE.

   If anything, the display of RHODE in variant forms makes it less likely that Plaintiff acquired secondary meaning in the singular RHODE mark, specifically. *See, e.g.*, PK Decl. Ex. 32 at 2 ("On the #rhode"); *id.* at 3 ("#rhoderesort" and "#ontherhode"); *id.* at 4 ("#ontheRHODE"); *id.* at 5 ("#ON*THE*RHODE").  Where a plaintiff "'infused the market with several names'" this "'decreases the likelihood that any one name acquired secondary meaning.'" *Jewish Sephardic*,

478 F. Supp. 2d at 373 (quoting *Fraga v. Smithaven MRI*, 866 F. Supp. 107, 112 (E.D.N.Y. 1994));

*Morgans Grp. LLC v. John Doe Co.*, 2012 WL 1098276, at *7 (S.D.N.Y. 2012) (inconsistent

display of mark weighed against secondary meaning).  Tellingly, Plaintiff is still referred to as

RHODE RESORT three years after its rebrand.  *E.g.*, KB Decl. Exs. 13, 14, 87.

> **Sales Revenues.**  Plaintiff does not provide sales data for its RHODE branded products as

of February 2020.  It claims to have had $9 million in sales in 2021, PK Decl. ¶ 15, but this is after

the cut-off for secondary meaning.  This number is also naked and otherwise unsubstantiated,

*BigStar*, 105 F. Supp. 2d at 203 (plaintiff introduced "no documentary support in the record" as to

sales, relying only on an affidavit), out of context, *Mana Prods., Inc. v. Columbia Cosmetics Mfg.,*

*Inc.*, 65 F.3d 1063 (2d Cir. 1995) (plaintiff offered no "information as to ... relative market share"),

and includes its international sales, which are irrelevant to secondary meaning in the U.S.

> **Unsolicited Media.**  Plaintiff includes only three articles mentioning it prior to February

2020, and there is no evidence they were unsolicited.  PV Decl. Exs. 1, 8, 9; *Reply All Corp. v.*

*Gimlet Media, LLC*, 843 F. App'x 392, 395–96 (2d Cir. 2021) ("While [plaintiff] argues that its

mark has acquired distinctiveness through 'unsolicited media coverage,' ... it points to only two

such articles ... and [it] offers no evidence indicating that these articles were in fact unsolicited.").

One article even suggests that Plaintiff was a "little-known brand."  PV Decl. Ex. 9 at 2 ("[B]uyers

[are] constantly on the hunt for the next cult dress by the next little-known brand to skyrocket on

Instagram.  One of the success stories is Rhode[.]").  A second covers *14* brands, with a single

sentence about Plaintiff.  *Id.* Ex. 8.  The third is a puff piece in a small online blog.  *Id.* Ex. 1.[9]

---

[9] Plaintiff also filed incomplete posts from two online blogs and *vogue.com* dated 2019, each mentioning one of
Plaintiff's dresses among many other brands.  PK Decl. ¶ 13, Ex. 7 at 5 (one of 23 dresses); *compare id.* at 2, *with*
www.yahoo.com/video/items-editors-wore-york-got-150000254.html (full post discussing 50+ items, of which
Plaintiff's dress was one); *compare* PK Decl. Ex. 5 at 2, *with* www.vogue.com/article/biggest-instagram-trends-
summer-2019 (full post; around 20 items).  These hardly constitute media coverage of Plaintiff, or show a focus on
the RHODE brand, and there is no evidence they were unsolicited.

***Length & Exclusivity.*** "[C]ourts often point to five years of *exclusive* use of a mark as evidence of secondary meaning." *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am. Inc.*, 527 F. Supp. 3d 305, 318 (E.D.N.Y. 2021). Exclusivity is critical: "The Second Circuit has advised ... that whatever the length of use by one party, use of part or all of a mark by third parties weakens the mark's overall strength." *BigStar*, 105 F. Supp. 2d at 203 (citation omitted).

Plaintiff is unable to show exclusive use of RHODE for any length of time. There are several entities that use RHODE for similar goods, including but not limited to those below—

| Mark | Goods | Mark | Goods |
|------|-------|------|-------|
| **Rhodes Boutique** | Apparel, Footwear | **Trumbell Rhodes** | Apparel |
| **Rhodes** | Footwear | **Zandra Rhodes** | Apparel, Home |
| **Rodes** | Apparel | **Rhodes 5 & 10** | Apparel |
| **Pure Rhodes** | Cosmetics | **Rhodes & Beckett** | Apparel |
| **Rohde** | Footwear | **Rhode Runner** | Apparel |
| **Ben Rhodes** | Apparel | **Glossrhode Skin** | Cosmetics |
| **Cody Rhodes** | Apparel | **Rhodevision** | Apparel |

KB Decl. Exs. 26–39; *see also id.* Exs. 40–53 (other examples). Evidence shows that at least several of these were in use prior to February 2020. *Id.* Exs. 26, 28–37, 39, 40.

Plaintiff will be unable to show it timely acquired secondary meaning.

**2.      There Is No Likelihood of Confusion Between the Parties' Marks.**

**a.      The PTO Found No Likelihood of Confusion.**

The PTO's assessment of the likelihood of confusion is "a factor which, while not conclusive, is entitled to great weight." *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971). "[T]he same likelihood-of-confusion standard applies to both registration and infringement," *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015), and the "expertise of the trademark examiners ... entitle[s] their views to respectful consideration." *Limited v. Macy's Merch. Grp. Inc.*, 2016 WL 4094913, at *12 n.4 (S.D.N.Y. 2016), *aff'd sub nom. Joules Ltd. v. Macy's Merch. Grp., Inc.*, 695 F. App'x 633 (2d Cir. 2017).

Thus, that the PTO considered, and rejected, that there was a likelihood of confusion between the parties' marks is entitled to substantial weight in Rhode Skin's favor. *See, e.g.*, *Pilot Corp. of Am. v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 303 (D. Conn. 2007) (PTO approval of application for publication meant it saw no likelihood of confusion, a determination entitled to "great weight."). This conclusion is also supported by the *Polaroid* analysis, as explained below.

### b.   The *Polaroid* Test Weighs Against a Likelihood of Confusion.

The *Polaroid* factors guide courts in assessing the likelihood of confusion. *See* Mot. at 18 (listing factors). It is Plaintiff's burden to demonstrate a likelihood of confusion, which "requires a probability of confusion, not a mere possibility." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). Here, none of the factors favor Plaintiff.

*Strength*. The "strength" of a plaintiff's mark is assessed in terms of both inherent and acquired distinctiveness. *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020).[10] As discussed, RHODE is descriptive and lacks inherent distinctiveness. *Supra* 16–17. But even if the Court disagreed with such classification, RHODE still would not be "strong" due to the number of similar third-party marks and lack of acquired distinctiveness.

Third-party marks need not be identical to Plaintiff's mark to evidence weakness. "The use of **part** or all **of the mark** by third parties weakens its overall strength." *Time*, 173 F.3d at 118 (emphasis added); *Joules*, 695 F. App'x at 638 (uses of "'Jules' or a homophone" evidenced weakness); *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, 2018 WL 3407709, at *6 (S.D.N.Y. 2018) (BUZZR weak due to marks with "BUZZ" or a variation, including BUZBUZ

---

[10] Plaintiff discusses the relative strength of Rhode Skin's mark under this factor. Mot. at 20. While other circuits analyze the comparative strength of the defendant's mark when reverse confusion is alleged, the Second Circuit has not endorsed this approach when analyzing this factor. *See Saxon Glass Techs. Inc. v. Apple, Inc.*, 824 F. App'x 75, 79 (2d Cir. 2020) (analyzing only plaintiff's strength under this factor to affirm summary judgment in defendant's favor, despite that district court examined both parties' comparative strength); *Kelly-Brown*, 659 F. App'x at 61 (same); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 742–43 (2d Cir. 1994) (acknowledging claim for "reverse confusion" and analyzing only plaintiff's strength under this factor).

and BZZAGENT).  Here, there are **<u>28</u>** such third-party marks, which is significant evidence of weakness.  *See Joules*, 695 F. App'x at 638 ("at least twelve other trademark registrations and websites" using similar marks supported weakness); KB Decl. Exs. 26–53.

Plaintiff has provided no probative evidence of acquired distinctiveness.  There is no consumer survey evidence, attempts to plagiarize, or proof of substantial media that is *unsolicited*. *Supra* 20–21.  It provides no documented sales revenues or documented advertising expenditures, and its unsupported allegations of the same do not identify the portion attributed to the U.S. market. *See* PK Decl. ¶¶ 14–15.  And only about three years have passed since Plaintiff started using its RHODE mark, as opposed to RHODE RESORT.  *See supra* 5.  This factor favors Rhode Skin.

***Similarity of the Marks.***  The Court of Appeals has "cautioned that when addressing trademark similarity, courts should consider not simply 'the typewritten and aural similarity of the marks, but how they are presented in the marketplace.'"  *Reply All*, 843 F. App'x at 396 (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955 , 962 (2d Cir. 1996)).  "[T]he setting in which a designation is used affects its appearance and colors the impression conveyed by it ... .  Indeed, the impression conveyed by the setting in which the mark is used is often of critical importance." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458 (2d Cir. 2004) (quotation omitted).

Because a mark's setting is "often of critical importance," *id*., even marks sharing identical terms may not be confusingly similar under this factor.  *See, e.g.*, *Reply All*, 843 F. App'x at 396 (REPLYALL and REPLY ALL dissimilar in context of their respective websites or platforms); *Rush Indus., Inc. v. Garnier LLC*, 496 F. Supp. 2d 220, 226 (E.D.N.Y. 2007) (LONG'N STRONG and LONG & STRONG, both for haircare, distinguished by differences in font and colors).

The association of a mark with a celebrity may also distinguish it.  *See, e.g.*, *Brockmeyer v. Hearst Corp*, 248 F. Supp. 2d 281, 296 (S.D.N.Y. 2003) (Nearly identical "O" marks held

dissimilar, in part because "the 'O' in the defendants' magazine is a reference to Oprah Winfrey and her values, while the plaintiff's mark makes no reference to any particular personality[.]").

Here, the brand aesthetic of each party is a virtual opposite from the other. *Supra* 4-5. The typefaces and colors used by each are highly distinct. *Id.*; Mot. at 21. Rhode Skin's products, sold exclusively at rhodeskin.com, CA Decl. ¶ 49, are often referred to as "Rhode Skin," "Rhode Skincare" or "#rhodeskin." *See, e.g.*, PV Decl. Ex. 12 at 3, Ex. 14 at 3. Rhode Skin prominently emphasizes its connection to Ms. Bieber, including in the prominent tagline: "A new philosophy on skincare developed by HAILEY RHODE BIEBER." KB Decl. Ex. 5; PV Decl. Ex. 14 at 2; Mot. at 8–9. By contrast, Plaintiff's brand appears in entirely different contexts, including in physical stores, with a "honed aesthetic" of bold colors and prints, and focused on luxury, warm-weather travel, but not any particular celebrity. *Supra* 5. This factor weighs against confusion.

***Competitive Proximity.*** "Competitive proximity concerns whether and to what extent the two products compete with each other and the nature of the products themselves and the structure of the relevant market." *Joules*, 695 F. App'x at 636 (quotation omitted). Relevant considerations include "the class of customers to whom the goods are sold, the manner in which the products are advertised, and the channels through which the goods are sold." *Id.* (quotation omitted).

For instance, in *Joules*, **both parties were clothing companies**, and yet the Court of Appeals held that the district court erred in finding this factor weighed "clearly in favor of" plaintiff. *Id.* at 636–37. Although both parties sold clothing to similar customers through similar channels at similar prices, because the nature of the clothing differed (rainwear and casual wear), this factor only "slightly" favored the plaintiff. *Id.*

Here, the parties' offerings are in entirely different product categories—skincare and niche

luxury clothing, and they have very different price points. *Supra* 3–5.[11]  They have no overlapping channels of trade: Plaintiff sells primarily to wholesale buyers for luxury department stores and online resellers; Rhode Skin is fully direct-to-consumer through rhodeskin.com.  CA Decl. ¶ 49. The ultimate buyers of Plaintiff's clothes likely differ from Rhode Skin's too: while it offers no demographic information about them, most of the celebrities it claims popularized its clothes are around their 40's.  KB Decl. ¶ 55 ; PK Decl. ¶ 10.  By contrast, Ms. Bieber is 25, and much of her fanbase and target purchasers of Rhode Skin are in their teens and 20's.  CA Decl. ¶ 52.

A lack of competitive proximity is why virtually identical marks coexist throughout our economy, *e.g.*, DOVE (personal care goods) and DOVE (chocolate); DOMINO (sugar) and DOMINO'S (pizza); *see also* McCarthy § 24:62 (listing over 80 such pairs of marks for which courts found no likelihood of confusion).  Indeed, it is not uncommon to see such marks identifying distinct producers of fashion and personal care goods.  For example:

| | | | | | |
|---|---|---|---|---|---|
| **AERON** (clothes) | **AERIN** (perfumes) | **ELF** (clothes) | **E.L.F.** (cosmetics) | **NATIVE** (footwear) | **NATIVE** (skin+haircare) |
| **AG** (clothes) | **AG** (haircare) | **HUNTER** (footwear) | **HUNTER** (shaving) | **PARFAIT** (lingerie) | **LA PARFAIT** (cosmetics) |
| **BARDOT** (clothes) | **BARDOT** (cosmetics) | **KAI** (clothes) | **KAI** (skin+haircare) | **PHILOSOPHY** (clothes) | **PHILOSOPHY** (skincare) |
| **BECCA** (clothes) | **BECCA** (cosmetics) | **KEEN** (footwear) | **KEEN** (skincare) | **LES REVERIES** (clothes) | **REVERIE** (haircare) |
| **CARTER'S** (clothes) | **CARTER** (cosmetics) | **MERIT** (clothes) | **MERIT** (cosmetics) | **SISLEY** (clothes) | **SISLEY** (skincare) |
| **CROCS** (footwear) | **CROC** (haircare) | **MILLE** (clothes) | **MILLIE** (cosmetics) | **TART** (clothes) | **TARTE** (cosmetics) |
| **DOLCE VITA** (shoes) | **DOLCE VITA** (skincare) | **MORGAN & CO** (clothes) | **MORGAN** (skin+haircare) | **THINK** (footwear) | **THINK** (skincare) |

KB Decl. ¶¶ 56-76, Exs. 54–74.  Like the above brands, Rhode Skin and Plaintiff's RHODE can coexist.

---

[11] Although Plaintiff claims it plans to bring "RHODE fashion and home to a much wider audience at an accessible price point," PK Decl. ¶ 9, such alleged future plans are unsubstantiated and not relevant under this factor.

In its motion, Plaintiff cites a 1976 case finding fashion and beauty products related.  Mot. at 22–23 (citing *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976)).  But this decision relied on expert testimony and other "proof that the 'plaintiff's recognition is equivalent to that of [fashion] designers who had expanded into the cosmetics and fragrances fields[.]'"  *See Revlon, Inc. v. Jerell, Inc.*, 713 F. Supp. 93, 98 (S.D.N.Y. 1989) (discussing and quoting *Scarves by Vera*, 544 F.2d at 1174)).  It is inapplicable here.

Plaintiff also claims that "email promotions for Rhode's and Defendants' products have already been targeted at the same consumers."  Mot. at 22.  But it cites only one person's email inbox, and Vickers' declaration reveals it is *her* inbox—not that of a disinterested consumer.  PV Decl. ¶ 18.  Plaintiff also points to collaborations between fashion and personal care brands.  But such collaborations often unite fashion brands with unrelated products.  *See, e.g.*, KB Decl. Exs. 75–77 (Levi's × Lego; Nike × Ben & Jerry's; Dolce & Gabbana × Smeg).  The very point of them is to leverage two distinct customer bases, or to create novelty by associating unrelated products.[12]

There is no competitive proximity between the parties; this factor favors Rhode Skin.

**Sophistication of Relevant Consumers.**  This factor examines how "sophisticated and careful the average consumer of a product is," as such qualities make it "less likely ... that similarities in ...trade marks will result in confusion concerning the source or sponsorship of the product."  *Bristol-Myers Squibb Co. v. McNeil-PPC, Inc.*, 673 F.2d 1033, 1046 (2d Cir. 1992).

Plaintiff's Consumers.  Consumers of expensive clothing brands like Plaintiff's are sophisticated and careful, and not only because of price.  The market for boutique, high-end clothing is crowded, with similar labels commonly sold through the same channels.  *See, e.g.*, KB

---

[12] *See Bloomberg*, "From Target to Supreme, Branding's Latest Obsession is Collaboration" (Jan. 23, 2022), www.bloomberg.com/opinion/articles/2022-01-23/from-target-to-supreme-branding-s-latest-obsession-is-collaborations.

Decl. Ex. 78 (all at Neiman Marcus: RHODE and RHUDE, A.P.C. and A.L.C., MARIA OLIVER and MARIE OLIVER, RETROFETE and RETROUVE, SHAN and SHANI).  Consumers are thus conditioned to be attentive to small distinctions between marks and to other indicia of source.  *See Mahender Sabhnani v. Mirage Brands, LLC*, 2021 WL 6072822, *11 (T.T.A.B. 2021).

Even within this fragmented market, Plaintiff's clothing is niche, reflecting a "unique" look, that is highly "recognizable" with a "honed aesthetic."  Mot. at 19, 29.  Its buyers are likely to be focused and discerning, not easily diverted by affordable skincare targeting a younger cohort.

Plaintiff claims its sales at places like Neiman Marcus and Bergdorf Goodman favor confusion because they also sell skincare.  Mot. at 4.  Courts disagree, due to the sophistication of consumers who shop at such places, and because it is the nature of department stores to sell a broad variety of goods under one roof.  *See, e.g.*, *Revlon*, 713 F. Supp. at 99; *see also* McCarthy § 24:45.

Rhode Skin's Consumers.  "Many courts have recognized that purchasers of ... skin care products tend to exercise a high degree of care and brand consciousness."  *Herbalife Int'l, Inc. v. Lumene N. Am., LLC*, 2007 WL 4225776, at *10 (C.D. Cal. 2007) (collecting cases).  Courts in this Circuit are no exception.  *See, e.g.*, *Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175, 192 (S.D.N.Y. 2008); *Juicy ZCouture, Inc. v. L'Oreal USA, Inc.*, 2006 WL 1012939, at *29 (S.D.N.Y. 2006); *Clinique Labs., Inc. v. Dep Corp.*, 945 F. Supp. 547, 556 (S.D.N.Y. 1996).

Skincare consumers exercise care even when products are inexpensive.  *See Clinique*, 945 F. Supp. at 556; *Herbalife*, 2007 WL 4225776, at *11.  They are especially careful when buying facial skincare.  *Clinique*, 945 F. Supp. at 556 (Consumers "take care in deciding what products to use on their skin, particularly the skin on their faces."); *Boost Beauty, LLC v. Woo Signatures, LLC*, 2022 WL 409957, at *11 (C.D. Cal. 2022) ("[T]he goods at issue are cosmetic products that consumers must apply to a sensitive portion of the body ... .  This counsels against finding a

likelihood of confusion."); *Juicy ZCouture*, 2006 WL 1012939, at *29 ("[C]onsumers ... are likely

to examine with care the products they apply to their skin and lips."); CA Decl. ¶ 52.  Rhode Skin

products are for the skin and lips, and thus its consumers are likely to exercise great care.  *Id*.

Under this factor, Plaintiff argues that "[t]he internet context broadly weighs in favor of

finding a likelihood of confusion."  Mot. at 29–30.  But the cases it cites are twenty years old

before the advent of modern ecommerce; courts now reject this notion.  *See Reply All*, 843 F.

App'x at 397; McCarthy § 24:53.50.  This factor weighs strongly in Rhode Skin's favor.

***Likelihood of Bridging the Gap.***  This factor "refers to the likelihood that the senior user

will enter the junior user's market in the future, or that consumers will perceive the senior user as

likely to do so."  *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005).  Citing

*Scarves by Vera*, Plaintiff argues that "fashion and beauty" are so related as to obviate the need for

analysis under this factor.  Mot. at 23 (citing 544 F.2d at 1174).  If true, this would eliminate the

distinctions between such goods that the PTO applied to green light the Rhode Skin application in

Class 3.  In any event, the cited *Vera* language was in the context of balancing the factors; it did

not hold that gap-bridging analysis is unnecessary whenever fashion and beauty are concerned.

Plaintiff also offers vague, unsubstantiated (and hearsay) allegations that "collaborators

[have] asked us specifically if we could add some cosmetics products," and "it is a natural and

expected extension and a step we hoped to take in the future."[13]  Mot. at 24.  But more than just

"self-serving statements in plaintiff's declaration" are required to support its intention to bridge

the gap.  *Khan*, 419 F. Supp. 3d at 556.  Without "evidence of a concrete expansion plan," this

factor does not favor confusion.  *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 295

---

[13] While Plaintiff also points to Rhode Skin's likelihood of bridging the gap, this factor analyzes only the *plaintiff's* likelihood of doing so.  *See Star Indus.*, 412 F.3d at 387.  Moreover, Defendants have no plans to use RHODE as a trademark for clothing in the U.S.  HRB Decl. ¶ 15.

(S.D.N.Y. 2012).  Moreover, an "intent of the prior user to expand ... unless known by prospective purchasers, does not affect the likelihood of confusion."  *Saxon Glass*, 824 F. App'x at 80 (quotation omitted).  As there is no evidence of a concrete plan to move into skincare, or of any awareness of such plans by prospective purchasers, the factor favors Rhode Skin.

*Actual Confusion*.  For this "factor to weigh in its favor, [plaintiff] must show instances of actual confusion that 'could inflict commercial injury on [plaintiff] in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.'"  *Reply All*, 843 F. App'x at 397 (quoting *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991)).  As described below, Plaintiff's alleged evidence "reflect[s] only 'general mistake or inadvertence' that does not constitute 'cognizable instances of actual consumer confusion'" under this factor.  *Id.*

**(1)** an email from a Rhode Skin customer asking when her purchase would ship, mistakenly sent to Plaintiff.  Mot. at 26; PK Decl. ¶ 56, Ex. 37.  Misdirected communications, however, are not evidence of actual confusion.  *See, e.g.*, *Lang*, 949 F.2d at 583.  In *Lang*, the Court disregarded approximately four hundred misdirected phone calls as irrelevant: the callers may have been confused about the parties' contact information rather than their offerings, and there was no evidence that any were prospective purchasers.  *Id.* at 582–83.  That is also the case here.

**(2)** Instagram posts showing Plaintiff's clothing tagged "@rhode" instead of Plaintiff's "@shoprhode."  *See* Mot. at 10.  Here, such users probably assumed that Plaintiff's handle was "@rhode", and would have entered that name regardless of whether Rhode Skin existed or not.  Such mistakes appear common with names styled as "@shop[BRAND]," even when there is no commercial activity at the mistagged "@[BRAND]" account.  *See, e.g.*, @shop6THSTREET mistagged @6THSTREET (an account with zero posts), @shopAKIRA mistagged @AKIRA (same), @shopCIDER mistagged @CIDER (same).  KB Decl. Exs. 79–81.

Further supporting this explanation is the fact that much of the mistagging occurred between April 2021 and April 2022—*before* Rhode Skin actively used @rhode.  *See* PK Decl. Ex. 25 at 5 (Apr. 14, 2021), Ex. 23 (Jan. 13, 2022); KB Decl. ¶ 25, Ex. 24 (Mar. 23, Apr. 14, and Feb. 2, 2022); CA Decl. ¶ 51 (@rhode first post was June 8, 2022).  For instance, while Plaintiff makes much of a fashion blogger tagging its dress @rhode, it fails to point out that this was on **January 8, 2022**—six months before Rhode Skin used @rhode.  Mot. at 10; PK Decl. ¶ 40, Ex. 23.

Further, even if some users knew "@rhode" was Rhode Skin, such mistagging would still be irrelevant.  *See Reply All*, 843 F. App'x at 397–98 (Social media users accidentally "tagging" one brand owner while intending to tag another, "without more—do[es] not suggest that those potential consumers in any way confused [the parties'] products, let alone that there was confusion that could lead to a diversion of sales, damage to goodwill, or loss of control over reputation.").

**(3)** comments from two Instagram users: (i) on a post about Rhode Skin, @melatidejong mentions "@shoprhode" to ask if the dress Ms. Bieber is wearing "is available," and (ii) on a post by @shoprhode, @christinalchow asks "where do I find your new skincare line."  PV Decl. Ex. 16; PK Decl. Ex. 36.  This is inquiry confusion, and like the other kinds of confusion above, is not cognizable under this factor.  *Lang*, 949 F.2d at 582–83.  Moreover, @melatidejong appears to live in Australia, based on her profiles, and thus her perceptions are irrelevant to whether the use of the parties' marks causes confusion in U.S. commerce.  KB Decl. ¶ 84, Ex. 82.

**(4)** text messages between "a supporter" of Plaintiff and "a member of ... Ms. Khatau's family" asking if there is a relationship between Plaintiff and Ms. Bieber, and between an unidentified store owner and a "Rhode sales agent" asking if Plaintiff offers Rhode Skin products.  Compl. ¶ 88; Mot. at 26–27 (citing Compl. ¶ 86).  "'Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion.'"  *Reply All*, 843 F.

App'x at 398 (quoting *Nora Bevs., Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001)).   Moreover, the "supporter" and "store owner" are unidentified, and the text is unauthenticated by either party to the communication.

**(5)** a text from an unidentified journalist to Vickers stating: "... I read about Hailey Bieber's Rhode beauty, wtf?! That's your name!!!"  PV Decl. ¶ 19, Ex. 11.  The journalist is not confused between the parties (indeed, it was the basis of her outreach), and thus this is irrelevant.

Even if the Court found some of the foregoing relevant, it would still only amount to the kind of *de minimis* confusion that is incapable of tilting this factor in a Plaintiff's favor.  *See, e.g.*, *Reply All*, 843 F. App'x at 398 (two instances of consumer confusion were "de minimis").

Plaintiff has also failed to put forth confusion survey evidence, and "'the absence of surveys is evidence that actual confusion cannot be shown.'"  *Id.* (quoting *Sports Auth.*, 89 F.3d at 964).  The lack of survey evidence weighs against a plaintiff even on a motion for a preliminary injunction.  *Abraham Zion*, 761 F.2d at 101; *Engine Cap. Mgmt., LP v. Engine No. 1 GP LLC*, 2021 WL 1372658, at *8 (S.D.N.Y. 2021).  This factor thus favors Rhode Skin.

**Bad Faith Intent.**  "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."  *Star Indus.*, 412 F.3d at 388.  Accordingly a junior user's greater name recognition weighs against any inference of bad faith.  *Id.* at 389.  Further, "'[s]election of a mark that reflects the product's characteristics, request for a trademark search and reliance on the advice of counsel are factors that support a finding of good faith.'"  *Reply All*, 843 F. App'x at 398 (quoting *Lang*, 949 F.2d at 583).

Ms. Bieber's greater name recognition is undisputed, weighing against bad faith.  *Star Indus.*, 412 F.3d at 388.  Rhode Skin's mark also reflects the product's characteristics—

31

specifically, the products' creator, Ms. Bieber.  It requested a trademark search, and it relied on the advice of counsel—not only its own counsel, but Plaintiff's counsel, who indicated an absence of likely confusion as long as Rhode Skin did not use RHODE for clothing.  Such indicia of good faith mean this factor favors Rhode Skin.  *Reply All*, 843 F. App'x at 398.

Plaintiff claims this factor is "resolved by determining" whether the junior user had knowledge of the senior's mark.  Mot. at 27.  This is incorrect.  *Lang*, 949 F.2d at 584. ("[A]doption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith.").  Plaintiff also claims that Ms. "Bieber seems intent on exacerbating [confusion], adopting taglines like 'shop rhode' and 'on the rhode' that Rhode itself has been using for years."  Mot. at 2.  This is misleading.  As its own exhibits show, these are not taglines, but are words pulled out of context from descriptive text.  *See* PV Decl. Ex. 15 at 2 (small print near footer of rhodeskin.com: "Join us on the rhode to an effortless glow.  Glaze your inbox with tips, tricks & exclusive content from Hailey."); *id*. Ex. 15 at 5 (post-sale email text: "You're officially on the rhode to dewy, delicious skin.  We'll let you know as soon as your order ships out...."); PK Decl. Ex. 31 at 3 (video with on-screen text: "Shop Rhode with Hailey.").  The context also reinforces that the products are skin care, not high-end clothing.

Finally, Rhode Skin's clothing-related activities do not show bad faith: it abandoned its recent intent-to-use application for RHODE in Class 25, and Ms. Bieber promoting the brand while wearing a RHODE logo on her shirt does not constitute use of the RHODE mark to sell clothing.

This factor favors Rhode Skin.

***Comparative Quality of the Goods.***  Here, there is no probative evidence of meaningful differences in quality.  This factor is therefore neutral.  *Reply All*, 843 F. App'x at 398.

***Balancing the Factors.***  Even if the Court found that a factor or two favored Plaintiff, this

would not support a likelihood of confusion.  *See, e.g.*, *Joules*, 695 F. App'x at 639 (no likelihood of confusion when two factors favored plaintiff); *E.A. Sween Co. v. A & M Deli Express Inc.*, 787 F. App'x 780, 785 (2d Cir. 2019) (same; three factors favored plaintiff).  For example, in *Savin*, despite that the parties used the identical term SAVIN and the "similarity" factor favored plaintiff, its claim could not even survive summary judgment once the factors were balanced.  391 F.3d at 462.  Here, too, the shared use of "rhode" would be insufficient to cause likelihood of confusion.

Plaintiff has failed to show likely success on the merits on either element of its claims.

## II.  Plaintiff Fails to Establish Likelihood of Irreparable Harm.

"The burden of proof and persuasion rests squarely on the party moving for a preliminary injunction to show that irreparable harm is likely."  *JBR*, 618 F. App'x at 34 (quotations, brackets omitted).  While the Lanham Act provides a presumption of irreparable harm if a plaintiff shows likelihood of success on the merits, it is rebuttable, and it does not apply if a plaintiff shows only "serious questions" going to the merits under the alternative standard.  15 U.S.C. § 1116(a).

When analyzing irreparable harm, a court should assess the adequacy of monetary relief.  "'The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'"  *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  It may also weigh whether plaintiff's goodwill in its mark is likely to be enhanced, rather than harmed.  *See Real USFL, LLC v. Fox Sports, Inc.*, 2022 WL 1134487, at *11 (C.D. Cal. 2022).

Plaintiff has failed to show likelihood of irreparable harm if this Court does not halt Rhode Skin's business during the disposition of the case.  First, there is no evidence of "detrimental effects from the purported confusion."  *Engine Cap*, 2021 WL 1372658, at *12.  Rather, the dispute has likely only increased Plaintiff's popularity, and probably its sales.  Its Instagram followers have increased by 11k since it filed suit.  *Compare* PK Decl. ¶ 17 (190k) *with* KB Ex. 7 (201k).  A

Google search for "Rhode clothing" brings up flattering news coverage of the founders and their lawsuit among the first results.  KB Ex. 83.  As to lost sales or expansion opportunities, Plaintiff offers only conclusory speculation, PK Decl. ¶¶ 60–62, which is contradicted by its expectation that sales will increase dramatically this year and next. *Id*. ¶ 15.  In the unlikely event Plaintiff did suffer lost sales, these could be compensable with damages after a decision on the merits. *Viamedia, Inc. v. WideOpenWest Fin., LLC*, 2020 WL 3415356, at *2 (S.D.N.Y. 2020).

Plaintiff also insists that Rhode Skin will "destroy[]" its goodwill, because "Rhode's goods have been misattributed to Defendants' 'rhode' online, and Rhode's customers are inquiring about the two brands' connections."  Mot. at 31.  But these limited instances of "confusion" are not the kind of confusion against which the Lanham Act protects, *supra* 29–31, nor are they "equivalent to evidence of irreparable harm." *Two Hands*, 563 F. Supp. 3d at 301.  Finally, Plaintiff's "pure speculation" that Rhode Skin might someday sell clothing is not the "real, immediate threat" necessary to support an injunction against Rhode Skin's skincare business. *See Algood Casters*, 2020 WL 5274172, at *4 (no irreparable harm where defendant had "no plans" to expand use).

## III.   The Balance of Hardships Weighs Against an Injunction.

Before granting an injunction, a Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.  For Rhode Skin, the consequences of an injunction would be severe. Substantial quantities of current or ordered product would become unsellable, and ▮▮▮▮▮▮ spent on content and promotion featuring the brand would be wasted.  CA Decl. ¶¶ 18, 21-23, 30, 39.  Rebranding costs, including a new brand identity, packaging, digital and website content, branded inventory, promotion, and other similar costs, would exceed ▮▮▮▮▮, not including the cost of running the business during the estimated ten-month period that it would take to rebrand. *Id*. ¶¶ 40, 48.  Rhode Skin also estimates lost revenues of nearly ▮▮▮▮▮. *Id*. ¶ 48.

Rhode Skin would also suffer irreparable, not easily quantified harms, as the success of its hotly anticipated and carefully orchestrated launch could not be replicated with a rebrand.  CA Decl. ¶¶ 35–38, 41–42.  Ms. Bieber cannot rebook *The Tonight Show* or *Good Morning America* to explain that her products will not bear her own name, and not be called RHODE after all.  *Id*. ¶ 38.  Neither are platforms like *Vogue*, *Elle*, *InStyle*, *Glamour*, and other tastemaking publications or people likely to give the same attention to a "do-over" launch of a new brand.  *Id*. ¶¶ 41–42.

Importantly, this is not a case where the harm facing Defendants is "of [their] own making." *See Riseandshine Corp. v. Pepsico, Inc*., 2021 WL 5173862, at *11 (S.D.N.Y. 2021) (Schofield, J.).  Here, Rhode Skin invested heavily in its mark only after: (1) the PTO, an expert agency tasked with assessing likelihood of confusion, found none, and (2) Plaintiff approved its use of RHODE for beauty products in its April 2021 letter.  This is not a case where a defendant invests in its brand *after* it is on notice that it is likely infringing.  *See id*. (Plaintiff sent a cease and desist letter "approximately two months before Defendant's product launched ... Defendant then apparently continued to invest heavily in its product while it ... prolonged the adjudication of this motion.").

A preliminary injunction would also harm Ms. Bieber and devalue her rights of publicity. The public would view it as a judicial determination of Ms. Bieber's culpability, not temporary relief based on a limited record.  *See WarnerVision*, 101 F.3d at 261 ("The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks.  It is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits[.]") (quotation omitted).  It would lend an aura of judicial approval to Plaintiff's personal attacks on Ms. Bieber: that she is a "superstar who does not much care that the name she prefers ... is already being used by two other women entrepreneurs"; that she should "have picked another mark and built that brand without destroying someone else's hard work."  Mot. at 2–3.

It would also harm her by preventing her from using her own family name to identify her own business.  *See Sardi's Rest. Corp. v. Sardi*, 755 F.2d 719, 725 (9th Cir. 1985) ("judicial reluctance" to "enjoin use of one's own name" is "one factor in [] analysis of the balance of hardships"); *Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc.*, 17 F. Supp. 2d 249, 252 (S.D.N.Y. 1998) ("In general, courts have been reluctant to enjoin the use of a personal name.").

RHODE is the closest thing to a surname available to Ms. Bieber, following the PTO's decision that her husband's marks preclude her from registering BIEBER BEAUTY.  She uses it in professional contexts, *e.g.*, in the tagline, "A new philosophy on skincare developed by HAILEY RHODE BIEBER."  It is also a family name, passed down through her mother to her, in the same way that surnames are typically passed from grandfather to father to son.  As such, enjoining her use of RHODE should be approached with the same "judicial reluctance" traditionally extended to men seeking to brand their businesses with their "surnames given at birth," *Brennan*, 360 F.3d at 132, especially at this early, preliminary stage.

As Plaintiff's claims of hardship are speculative at best, *see supra* 33–34, they do not come close to the hardship the injunction would impose on Rhode Skin.

## IV.    A Preliminary Injunction Is Not in the Public Interest.

"[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24.  If the Court grants the injunction, Rhode Skin's products would be off market and unavailable to its customers for at least ten months.  It would also embolden others to replicate Plaintiff's playbook: initially consenting to use when a company files an intent-to-use application, and then laying in wait until commercialization, when it may exact the maximum concessions.  It is not in the public interest to reward such conduct.

*                            *                            *

For the foregoing reasons, Rhode Skin asks that the Court deny the requested injunction.

36

Dated: New York, New York
   July 13, 2022

Respectfully submitted,

COOLEY LLP

By:   */s/ Michael Rhodes*     

  Michael Rhodes *(pro hac vice)*
  3 Embarcadero Center, 20th Floor
  San Francisco, CA  94111
  Phone:  (415) 693-2181
  Email:  rhodesmg@cooley.com

  Brendan Hughes *(pro hac vice)*
  Rebecca Givner-Forbes *(pro hac vice pending)*
  1299 Pennsylvania Ave., NW, Suite 700
  Washington, DC  20004
  Phone:  (202) 842-7800
  Email:  bhughes@cooley.com
     rgf@cooley.com

  Joseph Drayton
  55 Hudson Yards
  New York, NY  10001-2157
  Phone:  (212) 479-6539
  Email:  jdrayton@cooley.com

  *Counsel for Defendants*