UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
:
RHODE-NYC, LLC
:
      Plaintiff,
:
  vs.                                                        22-CV-5185 (LGS) (SLC)
:
RHODEDEODATO CORP., et al.,         :      **DECLARATION OF**
                                                       **HAILEY RHODE BIEBER**
      Defendants.                   :
:
------------------------------------- X

HAILEY RHODE BIEBER declares:

      1.      I am the President of Rhodedeodato Corp. ("Rhodedeodato") and Chairwoman and Founder of HRBeauty LLC ("HRBeauty"). I submit this Declaration in support of the opposition to the motion by Plaintiff Rhode-NYC, LLC ("Plaintiff") for a preliminary injunction to halt our launch of Rhode Skin and prevent Rhodedeodato, HRBeauty, or me from ever using the name "RHODE" in any manner as a trademark for skincare or clothing. I have personal knowledge of the matters stated herein, except for those matters as to which I show the basis of my belief.

      2.      As a female entrepreneur and model with an influential platform, I have been described as a "skincare obsessive."[1] Beauty routines have been important among the women in my family for generations. My grandmother was a makeup artist, and taught my mother the importance of a good skincare routine. My mother in turn taught me. Because my middle name "Rhode" is my mother's middle name and has been in the family for generations, I have always associated the name "Rhode" with family and beauty.

---

[1] *See* Brittany Talarico, *Hailey Bieber on New Skincare Line and Embracing Her Natural Beauty: 'I've Never Felt Sexier'*, People (June 15, 2022), https://people.com/style/hailey-bieber-rhode-beauty-launch-details-exclusive-interview/.

1

3.      But skincare brands can be expensive, contain unhealthy or unsustainable ingredients, or require overly complicated routines.  All of this convinces people that healthy skincare is not attainable.  I have never believed that.  My goal with Rhode Skin is to show that great skincare can be accessible to everyone.  After collaborating with dermatologists and chemists, we developed three products, meant to get at the essentials of an effective skincare routine: a skin moisturizer (Barrier Restore Cream), a gel serum (Peptide Glazing Fluid), and a lip treatment (Peptide Lip Treatment), all priced under $30.  I wanted a minimalist set of tried-and-true products that anyone could use on a daily basis at an affordable price point.  It was also important to me that Rhode Skin's products are certified cruelty-free, vegan, and gluten-free and use sustainable packaging materials.

4.      Rhode Skin launched its "Rhode" skincare line on June 15, 2022.  The reviews have been thrilling.  Beauty reviewers call it "100% worth the hype," stated that, "[m]y skin drinks this stuff right up," and that it makes skin look "super glowy and beautiful."[2]

5.      Rhode Skin was a long time in the making.  It was my first true entrepreneurial venture.  I started planning it in 2018.  During the initial stages, I explored a variety of business ideas, including clothing and beauty.

6.      I also explored different names for the business.  I wanted to select a brand name that would immediately associate the brand with my personal identity and personal brand that I had carefully developed over the years.

---

[2] Renee Rodriguez, *Hailey Bieber's Rhode Peptide Lip Treatment Is 100% Worth the Hype*, POPSUGAR (June 30, 2022), https://www.popsugar.com/beauty/rhode-peptide-lip-treatment-review-48872388;
Bella Cacciatore, *Hailey Bieber's Rhode Skin Is Finally Here—And We Tried It All*, Glamour (June 15, 2022), https://www.glamour.com/story/hailey-bieber-rhode-skin-care-review;
*TikTok Reviews Hailey Bieber's Rhode Skin*, Centennial Beauty (June, 20, 2022), https://centennialbeauty.com/rhode-skin-hailey-bieber-reviews/.

7. For my beauty business, I was exploring using the name BIEBER BEAUTY. In April 2019, my company Rhodedeodato applied for a trademark registration in the United States for that name. Unfortunately, my application was refused because the United States Patent & Trademark Office ("PTO") believed that consumers might associate the name with my husband, Justin Bieber, and the beauty trademarks that use his name.

8. So, instead, in early 2020, I decided to select my middle name, "Rhode." I had been using the name "Rhode" professionally already, and continue to use it consistently as part of my professional identity. I formed my first company, Rhodedeodato, in 2015 when I was 18 years old. The name "Rhodedeodato" is a combination of my middle name, "Rhode," and my mother's maiden name, "Deodato."

9. I had already tried to register the trademark RHODE once, in 2018. During the planning stages, I explored using the name "RHODE" for a clothing brand. I learned that there were other trademarks containing "Rhode." But I did not believe (and still do not) that Rhodedeodato's use of RHODE would confuse consumers, in part because there were so many uses of the word out there in the market.

10. One of those users was Plaintiff's brand, which was then called "Rhode Resort." I was previously unfamiliar with Rhode Resort, which sold clothing aimed at luxury travelers. Again, I did not think that anyone could be confused: I had no plans to sell that sort of clothing, and it seemed plain to me that consumers could tell the difference between "Rhode" and "Rhode Resort."

11. Our counsel conducted a routine trademark search for RHODE. We learned that Plaintiff owned trademark registrations for RHODE and RHODE RESORT, but only was using the RHODE RESORT mark. When we applied for the RHODE trademark for clothing in

3

November 2018, Rhodedeodato's lawyer asked if Plaintiff would be willing to enter into a trademark coexistence agreement. As an alternative, we asked if Plaintiff would be willing to sell its trademark registration for RHODE so that our application would not be blocked. I did not want to buy Plaintiff's business, only its trademark registration. Unfortunately, Plaintiff declined the proposal. After the PTO denied registration of Rhodedeodato's mark for clothing, I moved on, and did not pursue registering or using the RHODE mark for clothing in the U.S. Meanwhile, Plaintiff evidently stopped using "Rhode Resort" and began calling itself "Rhode."

        12.     By early 2020, I had decided to use the RHODE mark for skincare. I had no reason to think that consumers would confuse skincare and clothing as they are different product categories and markets. We applied to register RHODE for beauty and wellness products on February 6, 2020. By October, I learned that the PTO had allowed this new application, and had received no objections from Plaintiff or anyone else. I did not expect to hear from Plaintiff, given the PTO's assessment, the fact that Plaintiff had not filed an opposition to our application, and also the fact that we were not going to be selling clothing under the RHODE mark.

        13.     Separately, I had also applied (through my company Rhodedeodato) to register HAILEY RHODE for clothing. That application has also cleared the PTO review and opposition process. While I am currently focused on Rhode Skin, in the future I may use HAILEY RHODE for a clothing label. I will not, however, use RHODE alone as a trademark for a clothing line in the U.S.

        14.     In the Fall of 2020, my team began to prepare for the launch of Rhode Skin. Rhodedeodato filed another trademark application for the logo **rhode** for the same beauty and wellness products covered by our other pending RHODE application. On March 31, 2021, we formed HRBeauty, a new entity that would commercialize, develop, market and

distribute the products. Rhodedeodato would license its rights in the RHODE mark to HRBeauty until launch, and then after launch assign those rights to HRBeauty as its successor. Today, HRBeauty owns the RHODE mark in connection with that business.

15.     On April 15, 2021, my lawyer received a letter from Plaintiff objecting to our applications for RHODE for beauty and wellness products, as well as the application for HAILEY RHODE for clothing. We explained that we had no plans to use the RHODE mark for clothing, and that we planned to focus solely on beauty and wellness goods under that mark. For sake of clarity, we still have no plans to use the RHODE mark for clothing in the U.S.

16.     Plaintiff sent a response two weeks later, on April 28. It said that it would monitor us to "ensure" that we "continue to refrain from using the RHODE mark for related goods in Class 25, and use the RHODE mark only for the beauty and wellness goods in Class 3[.]" We understood this meant that Plaintiff would not object as long as we used RHODE to sell beauty goods but not clothing in the U.S.

17.     We thereafter made substantial investments of time, money, effort and other resources in building a skincare brand from scratch under the RHODE mark. I helped develop the products in collaboration with skincare experts, dermatologists and chemists. I asked for advice from everyone I knew, including beauty influencers Hyram Yarbro, Charlotte Palermino, Jen Atkin, Dr. Barbara Sturm, and many others. I learned what sorts of brands work and what do not. We carefully developed a brand identity and design. Once our design was finalized, and our RHODE mark had cleared the PTO process, we commissioned multiple photoshoots, and developed video content alongside a variety of other promotions.

5

18. In a November 22, 2021 YouTube video, I announced that Rhode Skin was on its way.[3] In April 2022, I officially announced the brand, and was featured in *Allure*'s May 2022 cover story talking about the upcoming launch in June 2022.[4] During that time, Plaintiff did not contact us and we operated under the understandings that had been confirmed by Plaintiff's lawyers back in April 2021.

19. I want to be clear: Rhode Skin's product offerings are currently limited to skincare. At some point in the future, the brand will expand into other beauty and wellness products as described in its trademark applications, but we are proceeding carefully with the expansion so that we only launch a product once we have complete confidence in it.

20. Similarly, we have no plans to sell clothing under the RHODE mark in the U.S. During the promotional campaign for the brand, I posed with some T-shirts that had the RHODE logo on them. But those were only promotional to market our skincare products and are not for sale. I also recently commented on a TikTok post that "Clothes will come," but I was referring to an entirely different business venture, unrelated to the RHODE brand, that I would be exploring at a later date. Finally, I recently learned that, in May, HRBeauty had filed a U.S. application in its name to register RHODE for a variety of goods, including clothing. This appeared to have been the result of miscommunication or misunderstanding. I was unaware of this application until only recently, and I have instructed that it be abandoned given that it did not reflect our business plans for the RHODE mark. I understand that this has now occurred.

21. On June 13, 2022—two days before our planned launch of Rhode Skin—Plaintiff sent a surprise letter. It demanded not only that we stop using RHODE for clothing—which we

---

[3] Hailey Rhode Bieber, *Answering Your Questions! | HAILEY RHODE BIEBER*, YouTube (Nov. 17, 2021), https://www.youtube.com/watch?v=G6SRRvF83ao.
[4] Darian Symone Harvin & Zoey Grossman, *Hailey Bieber Knows You're Sick of Celebrity Beauty Brands*, Allure (May 2022), https://www.allure.com/story/hailey-bieber-cover-interview-may-2022.

6

had no plans to do—but also that we stop using RHODE at all, and rebrand the entire skincare line that was about to launch.

22. I was crushed, and more than a little confused. After assuring us (through the exchange of letters between lawyers) that it would not have an issue with our use of RHODE for beauty and wellness products back in April of 2021, Plaintiff then tried to halt our launch with only two days' notice. I do not see Plaintiff selling any skincare products, and cannot understand why it claims to have trademark rights in skincare. We wrote back to Plaintiff. Rhode Skin then launched as planned on June 15. One week later, Plaintiff sued us.

23. I would like to respond to the unfounded accusations from Plaintiff's CEO that I am trying to "stifle" and "destroy" its business. That is not true at all. I appreciate and respect that Plaintiff is a woman-owned business, just like Rhode Skin. I want all women to succeed and thrive in their respective industries, and believe that there is enough space for everyone. But I do not understand why Plaintiff feels it can stop others from using the name "Rhode" for skincare, which it has never sold. Meanwhile, there are several others using the term RHODE or similar terms in Plaintiff's industry—clothing—and Plaintiff apparently does not object to those uses.

24. It is also wrong that Plaintiff waited until the week of Rhode Skin's launch to write to us. We had been in communication with Plaintiff starting around November 2018 and continuing into April 2021, and our plans to launch Rhode Skin had been public for many months. By June 13, 2022 we had spent a great deal of resources preparing for the imminent launch. Much of that effort can never be recaptured—for example, I could not go back on *The Today Show* to re-launch a new skincare brand, or replicate our photoshoots with a new brand name without excessively high costs and loss of goodwill. I would be emotionally devastated. Neither can we

recreate the excitement and anticipation of the launch, as well as all of the launch day events and media coverage, with a new brand name.

25. Even though Plaintiff's clothing brand is not harmed by Rhode Skin in any way, the Plaintiff's lawsuit itself has the potential to damage Rhode Skin's business. The first page of search results for "Rhode Skin" now shows multiple articles for this lawsuit, instead of consumers talking about their experiences with the products. There was no reason why Plaintiff needed to wait for the launch date except to cause this damage to Rhode Skin's brand. Nonetheless, I believe, as I have for years, that Rhode Skin can coexist with Plaintiff's clothing business.

26. I declare under penalty of perjury that the foregoing is true and correct. Executed on July 13, 2022.

_____<br>
Hailey Rhode Bieber

at a later date. Finally, I recently learned that, in May, HRBeauty had filed a U.S. application in its name to register RHODE for a variety of goods, including clothing. This appeared to have been the result of miscommunication or misunderstanding. I was unaware of this application until only recently, and I have instructed that it be abandoned given that it did not reflect our business plans for the RHODE mark. I understand that this has now occurred.

21. On June 13, 2022—two days before our planned launch of Rhode Skin—Plaintiff sent a surprise letter. It demanded not only that we stop using RHODE for clothing—which we had no plans to do—but also that we stop using RHODE at all, and rebrand the entire skincare line that was about to launch.

22. I was crushed, and more than a little confused. After assuring us (through the exchange of letters between lawyers) that it would not have an issue with our use of RHODE for beauty and wellness products back in April of 2021, Plaintiff then tried to halt our launch with only two days' notice. I do not see Plaintiff selling any skincare products, and cannot understand why it claims to have trademark rights in skincare. We wrote back to Plaintiff. Rhode Skin then launched as planned on June 15. One week later, Plaintiff sued us.

23. I would like to respond to the unfounded accusations from Plaintiff's CEO that I am trying to "stifle" and "destroy" its business. That is not true at all. I appreciate and respect that Plaintiff is a woman-owned business, just like Rhode Skin. I want all women to succeed and thrive in their respective industries, and believe that there is enough space for everyone. But I do not understand why Plaintiff feels it can stop others from using the name "Rhode" for skincare, which it has never sold. Meanwhile, there are several others using the term RHODE or similar terms in Plaintiff's industry—clothing—and Plaintiff apparently does not object to those uses.

24. It is also wrong that Plaintiff waited until the week of Rhode Skin's launch to write to us. We had been in communication with Plaintiff starting around November 2018 and continuing into April 2021, and our plans to launch Rhode Skin had been public for many months. By June 13, 2022 we had spent a great deal of resources preparing for the imminent launch. Much of that effort can never be recaptured—for example, I could not go back on *The Today Show* to re-launch a new skincare brand, or replicate our photoshoots with a new brand name without excessively high costs and loss of goodwill. I would be emotionally devastated. Neither can we recreate the excitement and anticipation of the launch, as well as all of the launch day events and media coverage, with a new brand name.

25. Even though Plaintiff's clothing brand is not harmed by Rhode Skin in any way, the Plaintiff's lawsuit itself has the potential to damage Rhode Skin's business. The first page of search results for "Rhode Skin" now shows multiple articles for this lawsuit, instead of consumers talking about their experiences with the products. There was no reason why Plaintiff needed to wait for the launch date except to cause this damage to Rhode Skin's brand. Nonetheless, I believe, as I have for years, that Rhode Skin can coexist with Plaintiff's clothing business.

26. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 13, 2022.

Hailey Rhode Bieber

*/s/ Hailey Rhode Bieber*

2